Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

CESAR TORRES,
)
 No. 08-02-00075-CR

)


 Appellant,
)
 Appeal from

)
 

v.
)
 243rd District Court

)


THE STATE OF TEXAS,
)
 of El Paso County, Texas

)


 Appellee.
)
 (TC# 20020d00133)


O P I N I O N



 Cesar Torres appeals his conviction for reckless injury to a child as alleged in Count II of the
indictment. A jury found Appellant guilty and assessed his punishment at imprisonment for a term
of ten years. Rejecting his complaints concerning a reasonable doubt instruction and evidentiary
error, we affirm.

FACTUAL SUMMARY


 On August 28, 2001, Appellant and his two-month-old son, Jonathan, arrived in an
ambulance at the emergency room of Del Sol Hospital in El Paso. Appellant reported to the
emergency room physician, Dr. Jose Crespo, that the child had been crying all day. He did not
mention a problem with Jonathan's leg. As Dr. Crespo examined Jonathan, he noticed that the child
was not moving his left leg and began crying more whenever Dr. Crespo touched it. X-rays revealed
a spiral fracture of the left femur. A spiral fracture occurs only when opposite rotating forces are
applied to the bone. Dr. Crespo analogized it to twisting a wet towel in opposite directions to
squeeze out the water. Because a significant amount of force is required to cause a spiral fracture,
Jonathon's injury could not have been self-inflicted.

 Trained personnel in the emergency department placed a cast on Jonathan's leg. Dr. Crespo
showed the x-ray to Appellant who denied any knowledge of how the injury might have occurred. 
After learning of the spiral fracture, Dr. Crespo notified Child Protective Services and hospital
security. Appellant and Jonathan were transported by ambulance to Providence Hospital where
Jonathan was admitted for additional treatment.

 Detectives Earl Arbogast and Miguel Vega of the El Paso Police Department responded to
Del Sol Hospital after receiving the report. They spoke briefly with Detective Ken Bauer who was
working as hospital security that evening. Upon learning that Appellant and Jonathan had been
transferred to Providence, Vega spoke with Jonathan's mother while Arbogast went to Providence
to continue the investigation. He located Appellant and inquired about all of the members of the
household. Appellant agreed to talk with Arbogast about the circumstances surrounding Jonathan's
injury and he subsequently gave a voluntary written statement. Appellant said he got home from
work at 7:30 a.m. on August 28 and he took care of his twin sons, Jonathan and Joseph, until his
wife came home from work at 6:30 that evening. Jonathan had been crying more than usual because
he had been sick. Shortly before his wife came home, Appellant changed Jonathan's diaper and
heard a pop while moving the baby's left leg. He called 911 because he thought something had
happened to Jonathan's leg.

 After Appellant gave the first statement, Arbogast explained to him that a spiral fracture is
caused by a twisting motion and significant force. Appellant then told Arbogast that he wanted to
tell the truth. Jonathan was crying while Appellant changed his diaper. Appellant pulled Jonathan
towards him but the child continued to cry. Appellant grew angrier and angrier. He grabbed
Jonathan's upper leg with one hand and the lower leg with the other hand and twisted in opposite
directions until he heard a pop. Appellant's wife arrived home shortly thereafter and he made up the
first story because he did not know what else to do. 

 A grand jury indicted Appellant for injury to a child in a three count indictment. Count I
alleged that Appellant intentionally or knowingly caused serious bodily injury to Jonathan by pulling
his leg and by twisting his leg. Count II alleged that Appellant recklessly caused serious bodily
injury to Jonathan by the same conduct as alleged in Count I. Count III alleged that Appellant
intentionally or knowing caused bodily injury by pulling Jonathan's leg or by twisting it. A jury
found Appellant guilty of Count II.

REASONABLE DOUBT INSTRUCTION


 In his first issue for review, Appellant complains of an instruction in the jury charge
pertaining to reasonable doubt. Contending that he sufficiently objected to the instruction, Appellant
argues that he suffered some harm from its inclusion. The State responds with alternative theories:
(1) the instruction given was not a definition of reasonable doubt, (2) it is not error to give a
reasonable doubt definition, (3) Appellant failed to properly object, and (4) he has not suffered
egregious harm.

Standard of Review


 When reviewing charge error, we employ a two-step analysis. Washington v. State, 930
S.W.2d 695, 698 (Tex.App.--El Paso 1996, no pet.). We must first determine whether error actually
exists in the charge. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); Washington,
930 S.W.2d at 698. In making this determination, we view the charge as a whole and our review
should not be limited to a series of isolated statements or parts of the charge standing alone. 
Washington, 930 S.W.2d at 698; see Holley v. State, 766 S.W.2d 254, 256 (Tex.Crim.App. 1989). 
Second, we must determine whether sufficient harm resulted from the error to require reversal. 
Almanza, 686 S.W.2d at 171; Washington, 930 S.W.2d at 698. Which harmless error standard
applies depends upon whether the defendant objected. Abdnor v. State, 871 S.W.2d 726, 731-32
(Tex.Crim.App. 1994); Washington, 930 S.W.2d at 698. In a case where the defendant failed to
object, he must show that he suffered actual egregious harm. Almanza, 686 S.W.2d at 171;
Washington, 930 S.W.2d at 698.

The Instruction


 The trial court gave the following general instruction to the jury:

 All persons are presumed to be innocent and no person may be convicted of an
offense unless each element of the offense is proved beyond a reasonable doubt. The
fact that a person has been arrested, confined, or indicted for, or otherwise charged
with an offense gives rise to no inference of guilt at the trial. The law does not
require a defendant to prove his innocence or produce any evidence at all. The
presumption of innocence alone is sufficient to acquit the defendant, unless the jurors
are satisfied beyond a reasonable doubt of the defendant's guilt after careful and
impartial consideration of all the evidence in the case.


 The prosecution has the burden of proving the defendant guilty and it must do so by
proving each and every element of the offense charged beyond a reasonable doubt
and if it fails to do so, you must acquit the defendant.


 It is not required that the prosecution prove guilt beyond all possible doubt; it is
required that the prosecution's proof excludes all 'reasonable doubt' concerning the
defendant's guilt. 


 In the event you have a reasonable doubt as to the defendant's guilt after considering
all the evidence before you, and these instructions, you will acquit him and say by
your verdict 'Not Guilty.' [Emphasis added].



Appellant complains only of the highlighted portion of the instruction. He did not object to this
instruction when the trial court asked for objections to the charge.

Paulson v. State


 Consistent with due process, the State is required to prove each element of an offense beyond
a reasonable doubt. See Tex.Pen.Code Ann. § 2.01 (Vernon 2003); Tex.Code Crim.Proc.Ann.
art. 38.03 (Vernon Supp. 2003). A defendant has long been entitled to have the reasonable doubt
standard applied in the jury charge or instructions, (1) but Texas law did not require a definition until
1991. With its decision in Geesa v. State, the Court of Criminal Appeals required that the reasonable
doubt standard be defined in the charge and it adopted a federal pattern jury charge for the definition. 
Geesa v. State, 820 S.W.2d 154, 162 (Tex.Crim.App. 1991). Three years later, the United States
Supreme Court held that the federal constitution neither requires nor prohibits the giving of a
definition of reasonable doubt. Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d
583 (1994). So long as the court instructs the jury on the necessity that the defendant's guilt be
proved beyond a reasonable doubt, the Constitution does not require that any particular form of
words be used in advising the jury of the government's burden of proof. Id. Acknowledging the
holding in Victor v. Nebraska, the Court of Criminal Appeals subsequently overruled the portion of
Geesa mandating a reasonable doubt definition. Paulson v. State, 28 S.W.3d 570, 573
(Tex.Crim.App. 2000). (2) The court not only determined that a definition is unnecessary, it found
portions of the Geesa instruction to be "redundant, confusing, and logically-flawed." Paulson, 28
S.W.3d at 573. Thus, Paulson dictates that the better practice is to give no definition of reasonable
doubt to the jury. Id. Despite its criticism of the Geesa definition, however, the court concluded that
reversible error does not occur if both the State and defense agree to give that definition to the jury. 
Id.

Instruction or Definition?


 We will first consider the State's argument that the instruction given does not violate Paulson
because it did not define reasonable doubt. Since Paulson, several courts have reviewed claims of
error in instructions like the one given here. The Waco Court of Appeals determined that the
instruction violates Paulson but deemed the error harmless. Phillips v. State, 72 S.W.3d 719, 721
(Tex.App.--Waco 2002, no pet.). The Austin Court of Appeals has held that the instruction is
definitional "in a sense" and therefore violates Paulson. Rodriguez v. State, 96 S.W.3d 398
(Tex.App.--Austin 2002, pet. ref'd). Other courts have concluded that it is not error to include such
an instruction in the charge because it does not constitute a definition of reasonable doubt. See
Minor v. State, 91 S.W.3d 824, 828-29 (Tex.App.--Fort Worth 2002, pet. ref'd); Carriere v. State,
84 S.W.3d 753, 759 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd); Vosberg v. State, 80 S.W.3d
320, 323-24 (Tex.App.--Fort Worth 2002, pet. ref'd).

 The Geesa instruction consisted of six paragraphs. Geesa, 820 S.W.2d at 162. General
instructions regarding the presumption of innocence and the prosecution's burden of proof are found
in the first, second, third, and sixth paragraphs while only the fourth and fifth paragraphs actually
defined reasonable doubt. The Court of Criminal Appeals criticized the entire instruction for its
redundancy but it is the definitional fourth and fifth paragraphs which Paulson referred to as
logically flawed and confusing. Paulson, 28 S.W.3d at 573. The instruction given here is part of
the general instruction found in the third paragraph. Simply put, it does not define reasonable doubt
but only instructs the jury that the defendant's guilt must be proved beyond a reasonable doubt, not
beyond all doubt. See Minor, 91 S.W.3d at 829; Carriere, 84 S.W.3d at 759. Consequently, we
agree with those courts holding that the challenged instruction does not constitute a definition of
reasonable doubt and, therefore, does not violate Paulson. See Minor, 91 S.W.3d at 829; Carriere,
84 S.W.3d at 759. As the instruction is not erroneous, it is unnecessary to address the State's
alternative arguments or conduct a harm analysis. Issue One is overruled.

ADMISSION OF BROKEN CHICKEN BONE


 In Issue Two, Appellant contends that the trial court erred in permitting Dr. Crespo to utilize
a broken chicken bone for purposes of demonstrating a spiral fracture for the jury. During
Dr. Crespo's testimony about the difference between an ordinary fracture and a spiral fracture, the
parties approached the bench and the prosecutor informed the court that he intended to ask
Dr. Crespo to demonstrate a spiral fracture on a chicken bone. The prosecutor stated that the x-rays
of Jonathan's leg had been destroyed before the State attempted to subpoena them. Appellant
objected to any demonstration of the bone being broken. The trial court required that the chicken
bone be broken by the doctor outside the presence of the jury, but he admitted the bone over
Appellant's objections based on relevance and Tex.R.Evid. 403. The court specifically found that
the bone had probative value since the State did not have the x-rays of Jonathan's leg and it would
be a helpful piece of demonstrative evidence for the jury. In the jury's presence, Dr. Crespo testified
that a chicken bone could show a spiral fracture in the same manner as a human bone. A spiral
fracture, such as the one Dr. Crespo had inflicted on the chicken bone, could only occur from counter
rotary traction. Dr. Crespo informed the jury that the radiologist who interpreted Jonathan's x-rays
also diagnosed a spiral fracture of the left femur.

Standard of Review


 The trial court has broad discretion in determining the admissibility of evidence, and its
ruling will not be reversed on appeal absent a clear abuse of discretion. Allridge v. State, 850
S.W.2d 471, 492 (Tex.Crim.App. 1991), cert. denied, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68
(1993); Arzaga v. State, 86 S .W.3d 767, 773-74 (Tex.App.--El Paso 2002, no pet.). As long as the
trial court's ruling was at least within the zone of reasonable disagreement, we will not intercede. 
Montgomery v. State, 810 S .W.2d 372, 391 (Tex.Crim.App. 1990)(opinion on reh'g); Arzaga, 86
S.W.3d at 774.

Demonstrative Evidence


 Demonstrative or illustrative evidence is an object which replicates or is similar to the real
thing but which is admittedly not the very thing itself. See Herasimchuk, Texas Rules of
Evidence Handbook, Rules 401-403 at 239 (4th ed. 2001). Such evidence has no independent
relevance to the case but it is offered to help explain or summarize the witness's testimony or to put
events and conditions into a better perspective. Id. at 239. To establish the relevancy of 
demonstrative evidence, the proponent must first authenticate it. Id. at 241. The proponent is then
required to establish that the evidence is fair and accurate and that it helps the witness to demonstrate
or illustrate his testimony. Id. at 241; see also Simmons v. State, 622 S.W.2d 111, 113
(Tex.Crim.App. 1981)(demonstrative evidence is admissible if it tends to solve some issue in the
case and is relevant, that is, if it sheds light on the subject at hand). An item of demonstrative
evidence must be properly identified by showing that the item in question is what its proponent
claims as opposed to any idea of speculation, conjecture, or presumption of what the exhibit
represents. Vollbaum v. State, 833 S.W.2d 652, 657 (Tex.App.--Waco 1992, pet. ref'd).
Demonstrative evidence has no probative force beyond that which is lent to it by the credibility of
the witness whose testimony it is used to explain. Herasimchuk, at 241. The trial court may
exclude demonstrative evidence if the probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury. See Tex.R.Evid. 403.

 Appellant contends that the chicken bone is irrelevant and substantially more prejudicial than
probative. He also complains that the trial court failed to give an instruction to assist the jury in
understanding the significance of the evidence. In support of his argument, he directs our attention
to Miskis v. State, 756 S.W.2d 350 (Tex.App.--Houston [14th Dist.] 1988, pet. ref'd). There, the
defendant committed an aggravated robbery by striking the complainant with a yellow, hard plastic
or fiberglass ball peen hammer during the course of a robbery. Id. at 351. Police recovered a ball
peen hammer from the defendant's vehicle but it had a wooden handle and a metal head. Id. They
did not find the yellow one used during the robbery. Id. At trial, the State sought to introduce the
ball peen hammer found in the defendant's vehicle. Id. Overruling the defendant's objections based
on relevance and lack of similarity, the trial court admitted the evidence. Id. The court of appeals
determined that the admissibility of demonstrative evidence is governed by Rule 403. Id. at 352. 
Creating an elaborate test for admission, the court concluded that an object which is not an exact
replica of the original used in the commission of a crime may be admissible if:

 (1) the original is not available;

 (2) if available, the original would be admissible;

 (3) if it is relevant and material to an issue in the controversy;

 (4) its probative value outweighs any inflammatory effect; and

 (5) the jury is instructed that the object is not the object used in the commission of
the crime, and is to be considered by the jury solely as evidence that demonstrates or
illustrates the appearance of the object used in the offense.


Id. at 352. The court additionally observed that the substitute object should have "no inflammatory
attributes." Id. Applying this test to the admission of the ball peen hammer, the court found the
admission of the hammer erroneous because it had little probative value since it was made of
different materials than the original, it was inflammatory in nature, and the trial court failed to give
a limiting instruction. Id.

 Miskis has been roundly criticized for several reasons. First, the opinion cites Rule 403 but
ignores the fact that all relevant evidence is admissible under the rule unless its probative value is
substantially outweighed by unfair prejudice. Herasimchuk, at 241 n.317. Second, the opinion
does not consider that evidence may be material even when offered upon a fact that is not in dispute. 
Id. Third, the opinion cites no precedent and expresses no logical rationale for the requirement that
demonstrative evidence is admissible only if the real evidence is "unavailable." Id. (Noting that the
real wrecked car might be available, but if a reasonably accurate drawing of it will help a witness
explain his testimony, the illustrative drawing should not be excluded merely because the proponent
could have produced the car itself.). We agree with these observations. Additionally, we note that 
the court of appeals found the evidence inadmissible under Rule 403 without mentioning whether
the defendant had raised a Rule 403 objection in the trial court. Similarly, the appellate court faulted
the trial court for its failure to give a limiting instruction without indicating whether a limiting
instruction was even requested. We respectfully decline to follow Miskis for all of these reasons.

 Dr. Crespo utilized the chicken bone to demonstrate how a spiral fracture occurs. He
explained that the exhibit accurately demonstrated a spiral fracture as it would appear in a human
bone. The trial court minimized any inflammatory impact the evidence might have had by not
permitting Dr. Crespo to break the bone in front of the jury. We find no abuse of discretion in the
trial court's determination that the broken chicken bone aided the jury in understanding Dr. Crespo's
testimony about the spiral fracture and that its probative value was not substantially outweighed by
unfair prejudice. See Vollbaum, 833 S.W.2d at 657 (styrofoam model of a woman's head was
admissible in homicide prosecution arising from fatal shooting of defendant's wife; trial court could
determine that model would assist jury in understanding testimony of medical examiner relating to
positions of gun and victim when gun was fired). Moreover, Appellant has waived his complaint
that the trial court erred in failing to give a limiting instruction by failing to request one at trial. See
Tex.R.Evid. 105(a)("When evidence which is admissible as to one party or for one purpose but not
admissible as to another party or for another purpose is admitted, the court, upon request, shall
restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such
request the court's action in admitting such evidence without limitation shall not be a ground for
complaint on appeal."). Issue Two is overruled. Having overruled both issues, we affirm the
judgment of the trial court.


July 31, 2003 
 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.


(Publish)
1. Pigg v. State, 162 Tex.Crim. 521, 287 S.W.2d 673, 675 (1956).
2. Paulson also overruled Reyes v. State, 938 S.W.3d 718 (Tex.Crim.App. 1996) which held that failure to give
the Geesa reasonable doubt definition is automatic reversible error. Paulson, 28 S.W.3d at 573.