Criminal Case Template



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



BRUCE ANTHONY COLEMAN,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-05-00257-CR


Appeal from the


Criminal District Court No. 5


of Dallas County, Texas


(TC# F-0320311-IL)


O P I N I O N



 This is an appeal from a jury conviction for the offense of burglary of habitation. The
jury assessed punishment at thirty years' imprisonment in the Institutional Division of the Texas
Department of Criminal Justice. We affirm.

 Latoya Coleman and Appellant were married and had one child, a son. Appellant had a
son from a previous marriage. Latoya Coleman testified that during her seven-and-one-half-year
marriage to Appellant, he was abusive and controlling. On one occasion, she tried to obtain a
driver's license. Appellant objected and told her he would, "get a shit load of arsenal" and "hunt
[her] down." She obtained a protective order against Appellant and moved in with her sister,
Jaywana Tadros, and Tadros's husband, Jason Tadros.

 Latoya Coleman's relationship with Appellant continued to deteriorate to the point where
she only communicated with Appellant about matters concerning their children. He accused her
of infidelity and begged her to come back to him. On Christmas day of 2003, Latoya Coleman
spoke to Appellant on the telephone and told him he could pick up the children at her mother's
home. She spoke to Appellant at about 10 p.m. after the children had returned. Appellant stated
that he loved her and that things were going to work out. A short time later she heard a knock at
the front door. She heard a loud bang, and she heard her brother-in-law cry out in pain. Her five-year-old niece came running down the hallway, and she stated that her father had been shot. 

 When Latoya Coleman tried to call the police, there was no dial tone. She turned and saw
Appellant pointing a gun at her. He was trying to pull the trigger, but the gun had jammed. As
he tried to fix the weapon, she grabbed her cell phone and she got into a closet with her two sons;
she leaned against the closet door. Appellant got his hand through the door and pointed the gun
at her head. Again, the gun jammed. Appellant hit his wife in the face with the gun. She heard
sirens, and Appellant fled.

 Jason Tadros testified that he, his wife, and daughter were watching television in their
bedroom when the doorbell rang. Jason Tadros went to answer the door and his daughter
followed him. When he opened the door, there was stranger at the door who said something
about the garbage at the back of the house. Appellant suddenly appeared at the side of the man at
the door with a gun pointed at Jason Tadros. Tadros raised his hand just as Appellant fired and
the bullet went through his hand, through his ear, and lodged in his throat. Tadros fell to the
ground. As he lay on the floor, Jason Tadros heard the sound of the door being pushed open and
two sets of feet stepped over him. Then he heard screaming and yelling coming from within the
house.

 Jaywana Tadros testified that she heard a gunshot several seconds after her husband left
the bedroom to answer the doorbell. Then her daughter ran back into the bedroom screaming. 
Jaywana Tadros was trying to get her daughter under the bed when Appellant came into the room
and pointed the gun at her. She thought that Appellant might have mistaken her for her sister,
Latoya Coleman. He pulled the trigger, but the gun would not discharge. He tried to pull the
trigger a second time, but the gun would still not fire. When Appellant left the room, Jaywana
Tadros went to get help.

 Lastly, there was testimony that search of the residence was conducted by police officers
and it appeared that the wires in the phone junction box on the south side of the house had been
jerked out.

 In Issue No. One, Appellant asserts that the evidence is legally insufficient to support the
conviction. Specifically, Appellant contends that the evidence does not prove that Appellant
intended to assault Jason Tadros at the moment Appellant entered the habitation. In reviewing
the legal sufficiency of the evidence, we are constrained to view the evidence in the light most
favorable to the judgment to determine whether any rational trier of fact could find the essential
elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
Butler v. State, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989); Humason v. State, 728 S.W.2d 363,
366 (Tex.Crim.App. 1987). More particularly, sufficiency of the evidence should be measured
by the elements of the offense as defined by the hypothetically correct jury charge for the case. 
Malik v. State, 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997).

 Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex.Crim.App. 1989), cert. denied, 498 U.S. 951, 111
S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex.App.--El Paso
1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence or evaluate the
credibility of any witnesses, and thus, the fact-finding results of a criminal jury trial are given
great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex.App.--El Paso 1995, pet.
ref'd); Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819
S.W.2d 839, 843 (Tex.Crim.App. 1991); Leyva v. State, 840 S.W.2d 757, 759 (Tex.App.--El
Paso 1992, pet. ref'd); Bennett v. State, 831 S.W.2d 20, 22 (Tex.App.--El Paso 1992, no pet.). 
Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact
are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. 
Adelman, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the evidence in
favor of the verdict. Matson, 819 S.W.2d at 843, quoting Moreno v. State, 755 S.W.2d 866, 867
(Tex.Crim.App. 1988). The trier of fact, not the appellate court, is free to accept or reject all or
any portion of any witness's testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex.App.--El
Paso 1995, pet. ref'd).

 The indictment in this case read, in pertinent part:

 [D]o present that one COLEMAN, BRUCE ANTHONY, Defendant, On or
about the 27th day of December A.D., 2003 in the County of Dallas and said 
State, did unlawfully, intentionally and knowingly enter a habitation without the
effective consent of Jason Tadros, the owner thereof, with the intent to commit a
felony other than theft, namely, Aggravated Assault,


 And further, said Defendant did unlawfully, intentionally and knowingly enter a
habitation without the effective consent of Jason Tadros, the owner thereof, and
did then and there commit and attempt to commit a felony other than theft,
namely, Aggravated Assault against Jason Tadros, . . . .


 The application paragraph in the court's charge to the jury read, in relevant part:


 Now, bearing in mind the foregoing instructions, if you find and believe from the
evidence beyond a reasonable doubt that the defendant, BRUCE ANTHONY
COLEMAN, on or about the 27th day of December, A.D., 2003, in the County of
Dallas and State of Texas, did unlawfully, intentionally or knowingly enter a
habitation without the effective consent of Jason Tadros, the owner thereof, with
the intent to commit a felony other than theft, namely aggravated assault; or,
further, said defendant did unlawfully, intentionally or knowingly enter a
habitation without the effective consent of Jason Tadros, the owner thereof, and
did then and there commit or attempt to commit a felony other than theft, namely
aggravated assault, then you will find the defendant guilty of the offense of
burglary of a habitation, as charged in the indictment, and you will make no
finding in your verdict as to punishment.


 Appellant contends that the evidence does not prove that he intended to assault Jason
Tadros at the moment Appellant entered the habitation. Rather, Appellant shot Jason Tadros and
then entered the house. Under the first paragraph of the indictment, the State was required to
prove that Appellant entered the habitation with the intent to commit aggravated assault; a
method of committing burglary proscribed by Tex.Penal Code Ann. § 30.02(a)(1) (Vernon
2003). Aggravated assault is committed by an individual if he intentionally or knowingly
threatens another with imminent bodily injury while using or exhibiting a deadly weapon. 
Tex.Penal Code Ann. § 22.02(a)(2) (Vernon 2003). Under the indictment and the application
paragraph of the charge, Appellant was not required to enter the habitation with the intent to
commit aggravated assault against Jason Tadros. Instead, his intent prior to entry could have
been directed at anyone else in the house. And indeed, Jaywana Tadros and Latoya Coleman
both testified that Appellant pointed a gun at them and the gun misfired. There had been marital
difficulties between Appellant and his wife, Latoya, and the phone lines had been tampered with
prior to entry. We find this evidence to be legally sufficient to support the conviction. Issue No.
One is overruled.

 In Issue No. Two, Appellant argues that the court erred by failing to track the elements of
the indictment in the application paragraph of the jury charge. Appellant maintains that as the
indictment named Jason Tadros as the intended victim, the application paragraph must require
proof that Appellant intended to assault Jason Tadros to the exclusion of all others in the house. 
However, as stated, under the first paragraph in the indictment, it was not required that Jason
Tadros be the victim. Accordingly, the court properly tracked the indictment in the application
paragraph of the charge to the jury. Issue No. Two is overruled.

 In Issue No. Three, Appellant contends that the court erred by providing the jury with a
definition of reasonable doubt in the charge to the jury. The charge to the jury read in pertinent
part:

 All persons are presumed to be innocent, and no person may be convicted of an
offense unless each element of the offense is proved beyond a reasonable doubt. 
The fact that a person has been arrested, confined, or indicted for, or otherwise
charged with, the offense gives rise to no inference of guilt at his trial. The law
does not require a defendant to prove his innocence or produce any evidence at
all. The presumption of innocence alone is sufficient to acquit the defendant,
unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt
after a careful and impartial consideration of all the evidence in the case.


 The prosecution has the burden of proving the defendant guilty, and it must do so
by proving each and every element of the offense charged beyond a reasonable
doubt; and if it fails to do so, you must acquit the defendant.

 

 It is not required that the prosecution prove guilt beyond all possible doubt; it is
required that the prosecution's proof excludes all 'reasonable doubt' concerning
the defendant's guilt.


 Appellant did not object to this instruction.

 When reviewing charge error, we employ a two-step analysis. Washington v. State, 930
S.W.2d 695, 698 (Tex.App.--El Paso 1996, no pet.). We must first determine whether error
actually exists in the charge. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984);
Washington, 930 S.W.2d at 698. In performing this analysis, we view the charge as a whole and
our review should not be limited to a series of isolated statements or parts of the charge standing
alone. Washington, 930 S.W.2d at 698; see Holley v. State, 766 S.W.2d 254, 256
(Tex.Crim.App. 1989). Next, we must determine whether sufficient harm resulted from the error
to require reversal. Almanza, 686 S.W.2d at 171; Washington, 930 S.W.2d at 698. Which
harmless error standard applies depends upon whether the defendant objected. Abdnor v. State,
871 S.W.2d 726, 731-32 (Tex.Crim.App. 1994); Washington, 930 S.W.2d at 698. In a case
where the defendant failed to object, he must show that he suffered actual egregious harm. 
Almanza, 686 S.W.2d at 171; Washington, 930 S.W.2d at 698.

 Appellant maintains on appeal that the above-quoted paragraph violated the holding of
Paulson v. State by giving a definition of reasonable doubt. In Geesa v. State, 820 S.W.2d 154
(Tex.Crim.App. 1991), the Texas Court of Criminal Appeals adopted a definitional instruction
for "reasonable doubt" and it required that the instruction be submitted to the jury in all criminal
cases. See Colbert v. State, 108 S.W.3d 316, 318 (Tex.Crim.App. 2003). The Court of Criminal
Appeals removed the requirement for the trial court to instruct the jury on the definition of
reasonable doubt in Paulson v. State, 28 S.W.3d 570, 573 (Tex.Crim.App. 2000). The court
determined in Paulson that the Geesa definition was confusing and logically flawed. Paulson,
28 S.W.3d at 573.

 This Court has previously rejected Appellant's argument in holdings that dealt with the
same language complained of in this instance. We stated that the challenged instruction does not
constitute a definition of "reasonable doubt;" therefore, it does not violate the holding in
Paulson. See Underwood v. State, 176 S.W.3d 635, 640-41 (Tex.App.--El Paso 2005, pet. ref'd);
Torres v. State, 116 S.W.3d 208, 212 (Tex.App.--El Paso 2003, no pet.). Issue No. Three is
overruled.

 We affirm the judgment of the trial court.


 DAVID WELLINGTON CHEW, Chief Justice


March 22, 2007


Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)

Barajas, C.J. (Ret.), sitting by assignment, not participating


(Do Not Publish)