Criminal Case Template



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



BRUCE ANTHONY COLEMAN,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-05-00260-CR


Appeal from the


Criminal District Court No. 5


of Dallas County, Texas


(TC# F-0320509-IL)


O P I N I O N



 This is an appeal from a jury conviction for the offense of violation of a protective order. 
The jury assessed punishment at ten years' imprisonment. We affirm.

 Latoya Coleman and Appellant were married and had one child, a son. Appellant had a
son from a previous marriage. Latoya Coleman testified that during her seven-and-one-half-year
marriage to Appellant, he was abusive and controlling. On one occasion, she tried to obtain a
driver's license. Appellant objected and told her he would, "get a shit load of arsenal" and "hunt
[her] down." She obtained a protective order against Appellant and moved in with her sister,
Jaywana Tadros, and Tadros's husband, Jason Tadros.

 Latoya Coleman's relationship with Appellant continued to deteriorate to the point where
she only communicated with Appellant about matters concerning their children. He accused her
of infidelity and begged her to come back to him. On Christmas day of 2003, Latoya Coleman
spoke to Appellant on the telephone and told him he could pick up the children at her mother's
home. She spoke to Appellant at about 10 p.m. after the children had returned. Appellant stated
that he loved her and that things were going to work out. A short time later she heard a knock at
the front door. She heard a loud bang, and she heard her brother-in-law cry out in pain. Her five-year-old niece came running down the hallway, and she stated that her father had been shot. 

 When Latoya Coleman tried to call the police, there was no dial tone. She turned and saw
Appellant pointing a gun at her. He was trying to pull the trigger, but the gun had jammed. As
he tried to fix the weapon, she grabbed her cell phone and she got into a closet with her two sons;
she leaned against the closet door. Appellant got his hand through the door and pointed the gun
at her head. Again, the gun jammed. Appellant hit his wife in the face with the gun. She heard
sirens, and Appellant fled.

 Jason Tadros testified that he, his wife, and daughter were watching television in their
bedroom when the doorbell rang. Jason Tadros went to answer the door and his daughter
followed him. When he opened the door, there was stranger at the door who said something
about the garbage at the back of the house. Appellant suddenly appeared at the side of the man at
the door with a gun pointed at Jason Tadros. Tadros raised his hand just as Appellant fired and
the bullet went through his hand, through his ear, and lodged in his throat. Tadros fell to the
ground. As he lay on the floor, Jason Tadros heard the sound of the door being pushed open and
two sets of feet stepped over him. Then he heard screaming and yelling coming from within the
house.

 Jaywana Tadros testified that she heard a gunshot several seconds after her husband left
the bedroom to answer the doorbell. Then her daughter ran back into the bedroom screaming. 
Jaywana Tadros was trying to get her daughter under the bed when Appellant came into the room
and pointed the gun at her. She thought that Appellant might have mistaken her for her sister,
Latoya Coleman. He pulled the trigger, but the gun would not discharge. He tried to pull the
trigger a second time, but the gun would still not fire. When Appellant left the room, Jaywana
Tadros went to get help.

 Lastly, there was testimony that search of the residence was conducted by police officers
and it appeared that the wires in the phone junction box on the south side of the house had been
jerked out.

 In Appellant's sole issue on appeal, he asserts that the court erred by providing the jury
with a definition of reasonable doubt. The charge to the jury read in pertinent part:

 All persons are presumed to be innocent, and no person may be convicted of an
offense unless each element of the offense is proved beyond a reasonable doubt. 
The fact that a person has been arrested, confined, or indicted for, or otherwise
charged with, the offense gives rise to no inference of guilt at his trial. The law
does not require a defendant to prove his innocence or produce any evidence at
all. The presumption of innocence alone is sufficient to acquit the defendant,
unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt
after a careful and impartial consideration of all the evidence in the case.


 The prosecution has the burden of proving the defendant guilty, and it must do so
by proving each and every element of the offense charged beyond a reasonable
doubt; and if it fails to do so, you must acquit the defendant.

 

 It is not required that the prosecution prove guilt beyond all possible doubt; it is
required that the prosecution's proof excludes all 'reasonable doubt' concerning
the defendant's guilt.


 Appellant did not object to this instruction.

 When reviewing charge error, we employ a two-step analysis. Washington v. State, 930
S.W.2d 695, 698 (Tex.App.--El Paso 1996, no pet.). We must first determine whether error
actually exists in the charge. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984);
Washington, 930 S.W.2d at 698. In performing this analysis, we view the charge as a whole and
our review should not be limited to a series of isolated statements or parts of the charge standing
alone. Washington, 930 S.W.2d at 698; see Holley v. State, 766 S.W.2d 254, 256
(Tex.Crim.App. 1989). Next, we must determine whether sufficient harm resulted from the error
to require reversal. Almanza, 686 S.W.2d at 171; Washington, 930 S.W.2d at 698. Which
harmless error standard applies depends upon whether the defendant objected. Abdnor v. State,
871 S.W.2d 726, 731-32 (Tex.Crim.App. 1994); Washington, 930 S.W.2d at 698. In a case
where the defendant failed to object, he must show that he suffered actual egregious harm. 
Almanza, 686 S.W.2d at 171; Washington, 930 S.W.2d at 698.

 Appellant maintains on appeal that the above-quoted paragraph violated the holding of
Paulson v. State by giving a definition of reasonable doubt. In Geesa v. State, 820 S.W.2d 154
(Tex.Crim.App. 1991), the Texas Court of Criminal Appeals adopted a definitional instruction
for "reasonable doubt" and it required that the instruction be submitted to the jury in all criminal
cases. See Colbert v. State, 108 S.W.3d 316, 318 (Tex.Crim.App. 2003). The Court of Criminal
Appeals removed the requirement for the trial court to instruct the jury on the definition of
reasonable doubt in Paulson v. State, 28 S.W.3d 570, 573 (Tex.Crim.App. 2000). The court
determined in Paulson that the Geesa definition was confusing and logically flawed. Paulson,
28 S.W.3d at 573.

 This Court has previously rejected Appellant's argument in holdings that dealt with the
same language complained of in this instance. We stated that the challenged instruction does not
constitute a definition of "reasonable doubt;" therefore, it does not violate the holding in
Paulson. See Underwood v. State, 176 S.W.3d 635, 640-41 (Tex.App.--El Paso 2005, pet. ref'd);
Torres v. State, 116 S.W.3d 208, 212 (Tex.App.--El Paso 2003, no pet.). Issue No. One is
overruled.

 We affirm the judgment of the trial court.


 DAVID WELLINGTON CHEW, Chief Justice


March 22, 2007


Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)

Barajas, C.J. (Ret.), sitting by assignment, not participating


(Do Not Publish)