COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

 

NO.  2-09-305-CR

 

 

 

DEBRA
HARTSOCK                                                                           APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

               FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I.  Introduction

Appellant Debra
Hartsock appeals from her conviction for driving while intoxicated.  In her sole point, Appellant contends that
the admission of a DVDCshowing a person=s eyes with and
without nystagmusCas demonstrative evidence was reversible
error because the State failed to establish the scientific reliability of the
Horizontal Gaze Nystagmus (HGN) test performed on the DVD.  We will affirm.








II.  Background

Shortly before 2
p.m. on November 19, 2008, while driving northbound on Locust Street in Denton,
Texas, Lawrence Gregg observed a Jeep approximately 100 yards in front of him
lose control, roll a couple of times, and come to rest on the driver=s side with the
undercarriage facing northeast.  Gregg
testified that the road was dry and that he did not observe any cars or
obstacles that would have forced the Jeep off the road.  Gregg=s passenger called
9-1-1 while Gregg checked on the Jeep driver. 
As Gregg approached, he smelled alcohol coming from the Jeep and saw
Hartsock crawl out of the passenger window.  


Gregg testified
that Hartsock appeared to be in shock, that she profusely cursed about wrecking
her Jeep, but that she did not appear to be injured except for a cut on her
face.  Gregg also testified that Hartsock
slurred her speech and appeared drunk.  

Responding to a
dispatch call, Denton Police Officers Kevin Vice and Alfonso O=Rozco arrived at
the accident scene and observed Hartsock standing near her vehicle, crying
hysterically, squatting up and down, and alternately screaming and
cursing.  Officer Vice noticed a couple
of small cuts on Hartsock=s fingers but did not observe any signs of
a head injury or bruising.  Hartsock
denied being injured.  When Officer Vice
inquired as to the cause of the accident, Hartsock replied that she was talking
on her cell phone and Athe next thing she knows, she wrecks.@  Officer Vice testified he detected the smell
of alcohol on Hartsock=s breath. 









The paramedics
found no other injuries, and Hartsock refused transport to the hospital.  Officer Vice observed Appellant had red and
glassy eyes, slurred speech, and staggered as she walked toward his patrol car.  Hartsock denied drinking alcohol, but told
Officer Vice she had taken some nonprescription medication three days
earlier.  Officer Vice administered the
HGN test to Hartsock.  He testified that
Hartsock exhibited all six clues of intoxication, could not correctly follow
his instructions, and swayed while he administered the test.  

While Officer O=Rozco investigated
the accident, during which he removed two rum bottlesCone empty and one
half-emptyCfrom Hartsock=s vehicle, Officer
Vice asked Hartsock to perform additional field sobriety tests.  Hartsock could not correctly recite the
alphabet.  Hartsock also failed the
walk-and-turn test in that she was neither able to follow Officer Vice=s instructions nor
maintain her balance during the test, eventually refusing to complete the
test.  Officer Vice testified that based
on his observations and the totality of circumstances, he concluded that
Hartsock had lost the normal use of her mental and physical faculties, and he
arrested her for the offense of driving while intoxicated.  He also testified that Hartsock refused to
provide a blood sample to be tested for her blood alcohol concentration. 








On February 12,
2009, the grand jury indicted Hartsock for the third-degree felony offense of
driving while intoxicated with two prior convictions. The indictment contained
an enhancement paragraph raising the punishment range to that of a
second-degree felony.  At the jury trial
on August 19, 2009, Hartsock pleaded not guilty to the primary charge of
driving while intoxicated and pleaded true to the enhancement paragraphs regarding
two prior driving while intoxicated convictions. 

During the trial,
the State offeredCfor demonstrative purposes onlyCa DVD featuring
videos of an individual=s eyes with and without nystagmus.  Upon Hartsock=s objection, the
trial court held a hearing outside the presence of the jury to determine the
admissibility of the DVD.  Officer Vice
testified that the DVD is a training tool used by the district attorney=s office to show
police officers how a person=s eyes look with
and without horizontal gaze nystagmus, that he had viewed the videos at the
district attorney=s office during a training session, and
that the videos would assist him with his testimony.  He further testified that he did not know who
created the videos.  Hartsock objected
because Officer Vice could not vouch for the authorship, authenticity, or
scientific principles applied in the videos. 
The trial court overruled Hartsock=s objection. 








Officer Vice
testified that Hartsock=s eyes are not on the DVD, but that the
videos would help the jury understand Awhat someone=s eyes looked like
when they have HGN and when they don=t.@  The trial court instructed the jury that the
videos did not show Hartsock=s eyes, and did
not indicate the level of alcohol consumption the individual in the video
consumed in order to demonstrate HGN, but was being shown Ajust to aid you in
the officer=s testimony what he observed, or at least
to show you what he believed he observed.@  After the DVD was played for the jury, Officer
Vice testified that he saw all six clues of intoxication in the DVD=s second video and
that they were the same six he observed in Hartsock=s eyes. 

The jury found
Hartsock guilty and assessed her punishment at fourteen years= confinement.  The trial court sentenced her accordingly.

III.  Analysis

In her sole point
on appeal, Hartsock contends that the trial court erred by admitting the DVD as
demonstrative evidence.  Specifically,
Hartsock argues that the DVD was inadmissible because the State failed to
establish the scientific reliability of the test it portrayed. 

A.  Standard of Review

A trial court=s ruling on the
admissibility of evidence is reviewed under an abuse of discretion
standard.  Moses v. State, 105
S.W.3d 622, 627 (Tex. Crim. App. 2003). 
If the trial court=s ruling was within the zone of reasonable
disagreement, there is no abuse of discretion. 
Id. 

B.  Trial Court=s Admission of DVD
Not An Abuse of Discretion

1.  Demonstrative Evidence Is Admissible To
Explain Testimony 








Demonstrative
evidence is evidence admitted to serve as a visual aid or illustration that
meets the tests of relevancy and materiality, as well as the limitations
imposed by Texas Rule of Evidence 403.  Baker
v. State, 177 S.W.3d 113, 123 (Tex. App.CHouston [1st
Dist.] 2005, no pet.).  The trial court=s discretion to
permit the use of visual aids, charts, and video recordings during trial is
well established.  Marras v. State, 741
S.W.2d 395, 404B05 (Tex. Crim. App. 1987), overruled on
other grounds, 851 S.W.2d 853, 860 (1993) (holding that a videotaped re‑enactment
of the defendant=s flight from the crime scene was
admissible); Baker, 177 S.W.3d at 123.

Demonstrative
evidence has no independent relevance to the case but is offered to help
explain or summarize the witness's testimony or to put events and conditions
into a better perspective.  Torres v.
State, 116 S.W.3d 208, 213 (Tex. App.CEl Paso 2003, no
pet.).  To establish the relevancy of
demonstrative evidence, the proponent must first authenticate it.  Id. 
The proponent is then required to establish that the evidence is fair
and accurate and that it helps the witness to demonstrate or illustrate his
testimony.  Id.; see Simmons v.
State, 622 S.W.2d 111, 113 (Tex. Crim. App. [Panel Op.] 1981) (holding that
demonstrative evidence is admissible if it tends to solve some issue in the
case and is relevant, that is, if it sheds light on the subject at hand).  Demonstrative evidence must be properly
identified by showing that the item in question is what its proponent claims as
opposed to any idea of speculation, conjecture, or presumption of what the
exhibit represents.  Torres, 116
S.W.3d at 213 (citing Vollbaum v. State, 833 S.W.2d 652, 657 (Tex. App.CWaco 1992, pet.
ref=d)).  Demonstrative evidence has no probative force
beyond that which is lent to it by the credibility of the witness whose
testimony it is used to explain.  Id.


2.  As Demonstrative
Evidence, State Did Not Need to Prove Scientific Reliability of HGN Test on DVD








Hartsock argues
that because Officer Vice neither knew who made the videos nor the
qualifications of the HGN test administrator on the DVD, the State submitted no
proof that the scientific technique judicially noticed to be reliable in Emerson
v. State was properly followed in making the videos.  See 880 S.W.2d 759, 768B69 (Tex. Crim.
App. 1994). 

To establish the
reliability of scientific evidence, the proponent must show:  (1) the underlying scientific evidence is
valid; (2) the technique applying the principle must be valid; and (3) the
technique must have been properly applied on the occasion in question.  Kelly 
v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).  In Emerson, the court took judicial
notice that the HGN test, as designed and promoted by the National Highway
Traffic Safety Administration (NHTSA), meets the first two of the three Kelly
requirements for determining the admissibility of scientific evidence.  Emerson, 880 S.W.2d at 768.  However, evidence must show that the third
requirement was metCthat the HGN technique was applied
properlyCon the occasion in
question.  Id. at 768B69.








Here, a review of
the record indicates that the DVD was not used as a scientific method of proof
that Hartsock was intoxicated, but to aid the jury in understanding HGN.  Officer Vice authenticated and identified the
DVD as one he viewed in the district attorney=s office and that
it is used to help officers identify an individual with horizontal gaze
nystagmus.  Officer Vice explained to the
jury that Hartsock=s eyes were not on the videos and that the
DVD would help him with his testimony because the DVD would help the jury
understand the signs he looks for when conducting the HGN test.  In addition, the trial court instructed the
jury that the DVD did not show Hartsock=s eyes and that it
was admitted only to aid the jury in understanding what Officer Vice believed
he observed as he conducted the HGN test on Hartsock.  Finally, the record does not indicate that
the DVD was used as direct or substantive evidence to support Hartsock=s intoxication.[1]  The DVD was admissible as demonstrative
evidence.  See Thrasher v. State,
No. 12-09-00334-CR, 2010 WL 2638070, at *2 (Tex. App.CTyler June 30,
2010, no pet.) (mem. op., not designated for publication).

Having determined
that the trial court did not abuse its discretion in admitting the DVD as
demonstrative evidence, we overrule Hartsock=s sole point.

IV.  Conclusion

Having overruled
Hartsock=s sole point, we
affirm the trial court=s judgment.

 

ANNE GARDNER

JUSTICE

 

PANEL:  GARDNER, MCCOY, and MEIER, JJ.

 

PUBLISH

 

DELIVERED:  August 19, 2010











[1]The record does not reveal that the
State mentioned the videos on the DVD during closing argument or at any other
point in the trial.