**Affirmed and Opinion Filed July 31, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01665-CR
### No. 05-13-01666-CR

**EDUARDO SALINAS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1263779-K and F-1263780-K**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Schenck
Opinion by Justice Lang

Eduardo Salinas appeals the trial court's judgments convicting him of aggravated assault. The jury found Salinas guilty of both offenses, that he used a firearm during the commission of the offenses, and assessed his punishment at fourteen years of imprisonment in each case. Salinas raises four issues arguing the trial court erred when it: (1) overruled his hearsay objection to the police officer's testimony; (2) overruled his objection to the admission of a computer printout of an image of a gun for demonstrative purposes; (3) failed to orally pronounce his sentence in trial court cause no. F-1263779-K; and (4) failed to orally pronounce his sentence in trial court cause no. F-1263780-K. Assuming, without deciding, the trial court erred when it overruled Salinas's hearsay objection to the police officer's testimony and his objection to the admission of a printed image of a gun for demonstrative purposes, we conclude Salinas has not

shown that he was harmed by the alleged errors. Because this appeal was abated and the trial court orally pronounced Salinas's sentences in both cases, we conclude his third and fourth issues are moot. The trial court's judgments are affirmed.

## I. PROCEDURAL BACKGROUND

Sergio Martinez and Francisco Carrillo-Guerrero were in the parking lot of the apartment complex where they lived when a man they did not know, later identified as Salinas, and a child, later identified as Salinas's nephew, approached them. Salinas asked Martinez and Carrillo-Guerrero if they had been "firing any shots at the apartments." Then, according to Martinez and Carrillo-Guerrero, Salinas took out a gun from his waistband and pointed it at Carrillo-Guerrero's eye, then Martinez's chest, and said he was going to kill one of them. At that point, Martinez's three-year-old son came running into the parking lot behind Salinas. When Salinas saw Matinez's son, he pointed the gun at the child. Martinez "got in front of it" and told Salinas to "calm down." Salinas asked his nephew, who was beside him, which of the two men he should kill first and his nephew responded "nobody." Martinez asked Salinas to let him take his son back to the apartment and Salinas agreed, but said Carrillo-Guerrero had to stay with Salinas.

While Martinez was taking his son back to their apartment, Salinas was talking with his nephew. Taking advantage of the distraction, Carrillo-Guerrero ran away and hid. From his hiding place, Carrillo-Guerrero saw Salinas take his nephew by the hand and walk in the direction from which he had come.

Martinez took his son back to the apartment, told his wife to call the police, and returned to the apartment parking lot because Martinez was worried about Carrillo-Guerrero's safety. When Martinez left his apartment, he saw that Salinas was no longer with Carrillo-Guerrero. As Martinez was walking, Salinas reappeared, grabbed Martinez by the neck, and held the gun to his

chest. Martinez struggled with Salinas and pleaded with Salinas to let him go because he had a family.

Meanwhile, Carla Alderete, Martinez's wife, saw that her son was very serious when Martinez brought him back to the apartment. Also, she saw that Martinez looked worried before he left the apartment again. Alderete asked her fifteen-year-old daughter and Martinez's step-daughter, to call the police because Alderete does not speak English very well. Her daughter wanted to know why she was calling the police so she "peeked through the door" and saw a man, who appeared to be intoxicated, pointing a gun at Martinez's head. She told Alderete what she saw and Alderete tried to go outside, but her daughter stopped her. Then, Alderete's daughter called the police.

Salinas eventually let Martinez go and Martinez returned to his apartment. Afterward, Carrillo-Guerrero watched Salinas and his nephew walk back in the same direction they were going earlier and go into an apartment. Once he saw Salinas close the apartment door, Carrillo-Guerrero walked home.

Officers Matthew Rizoli and Zachary Helm responded to the incident. When they arrived at the apartment complex, they saw a man matching the suspect's description walking with a small child. The officers approached Salinas at gunpoint and took him into custody, and the child ran away. They observed that Salinas appeared to be intoxicated, but did not find a weapon on him. Based on the information provided to the officers, they believed the child might be in possession of a firearm and in danger, so using Salinas's keys, they went into the apartment and performed a "protective safety sweep." However, they were unable to locate a weapon or the child. Salinas told the officers the child lived in another apartment, so the officers went to that apartment where they found the child with his parents, but no weapon. The officers did not search either apartment because they did not have a search warrant, but they did arrest Salinas.

Salinas was indicted for two offenses of aggravated assault. The indictments alleged that Salinas used or exhibited a deadly weapon, i.e., a firearm, during the commission of the offenses. The jury found Salinas guilty of both offenses, that he used a firearm during the commission of the offenses, and assessed his punishment at fourteen years of imprisonment in each case.

## II. ADMISSION OF EVIDENCE

In issues one and two, Salinas argues the trial court erred when it overruled his hearsay objection to Officer Helm's testimony and his objection to the admission of a computer printout of an image of a gun for demonstrative purposes. Salinas claims that he was harmed by these errors.

### *A. Harmless Error*

Pursuant to rule 44.2(b), "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011); *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). If the error did not influence the jury or had but a slight effect, the error is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). An appellate court should examine the record as a whole when conducting a harm analysis. *Motilla v. State*, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002). In conducting the harm analysis, an appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the trial court's instructions to the jury, the State's theory, any defensive theories, closing arguments, and even voir dire, if material to the appellant's claim. *Motilla*, 78 S.W.3d 355–56; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). In assessing harm, the factors to be considered are the nature of the evidence supporting the verdict, the

character of the alleged error, and how the evidence might be considered in connection with the other evidence in the case. *Motilla*, 78 S.W.3d 355; *Morales*, 32 S.W.3d at 867. Also, an appellate court should consider overwhelming evidence of guilt, but it is only one factor in the harm analysis. *Motilla*, 78 S.W.3d 357. Further, any error in the admission of evidence is harmless where other such evidence was received elsewhere without objection. *Coble*, 330 S.W.3d at 282; *Leday v. State*, 983 S.W.3d 713, 716–18 (Tex. Crim. App. 1998).

### B. Hearsay Testimony

In issue one, Salinas argues that whether he used a gun during the commission of the offense was a disputed fact and the State attempted to prove the existence of a gun by eliciting hearsay testimony from Officer Helm about what Salinas's nephew told him as to the gun. Salinas argues he was harmed by the error in admitting Officer Helm's testimony because Martinez's and Carrillo-Guerrero's testimony was vague and inconsistent, so the testimony influenced the jury. The State responds that the testimony was not offered to prove the truth of the matter asserted, but to explain the course of the investigation. Also, the State argues any error was harmless because Officer Helm's subsequent testimony as to the child's statement confirming Martinez's and Carrillo-Guerrero's accounts of the offense and negating Salinas's defensive claims was admitted without objection. Assuming, without deciding, the trial court erred when it overruled his hearsay objection to Officer Helm's testimony, we review the alleged error for harm.

First, we examine the evidence admitted for the jury's consideration. Salinas complains of the following testimony by Officer Helm on direct examination by the State was improper hearsay:

| Prosecutor: | Why were y'all wanting to go back into that other house? |
| Officer Helm: | We were informed that he had put the weapon inside of a cabinet, inside the apartment. |

| | |
|---|---|
| Defense Counsel: | Judge, I'm going to object to hearsay. |
| Trial Court: | Overruled. |
| Prosecutor: | Okay. So you had information that the gun was in the first apartment; is that right? |
| Officer Helm: | Correct. |
| Prosecutor: | And where was the gun supposed to be at? |
| Officer Helm: | It was supposed to be in some cabinets. |
| . . . . | |
| Prosecutor: | Did [Salinas] give you this information about where the gun was? |
| Officer Helm: | No. |
| Defense Counsel: | Objection. Hearsay, Your Honor, unless it's coming from the Defendant. |
| Trial Court: | Well, she asked him for it. Overruled. |
| Prosecutor: | Did [Salinas] tell you where the—where the gun was? |
| Officer Helm: | No. |
| Prosecutor: | Did you get the information from someone else? |
| Officer Helm: | We did. We received the information from [Salinas's nephew]. |
| Prosecutor: | Okay. |
| Defense Counsel: | Judge, this is hearsay. The officer knows it's hearsay. |
| Prosecutor: | Your Honor, I think it would come in under duress. |
| Trial Court: | Overruled. |
| Prosecutor: | So you went and you spoke with [Salinas's nephew]. He indicated the gun was in a cabinet? |
| Officer Helm: | Correct. |
| . . . . | |
| Prosecutor: | Okay. Without going into exactly what [Salinas's nephew] said, did the child confirm the incident took place? |

–6–

Officer Helm:            Yes, he did.

Later, during redirect examination, Officer Helm testified, without objection, he did not have any reason to believe Salinas's nephew was lying when he spoke with the child.

Also, the record shows that Martinez and Carrillo-Guerrero testified that Salinas threatened them with a gun. In addition, Martinez's step-daughter, an eyewitness to the offense, testified that, when she "peeked through the door" of their apartment, she saw Salinas pointing a gun at Martinez's head. Further, Officer Helm stated that the police did not find a gun.

Next, we review the State's and Salinas's theories, and the closing arguments of counsel. The State alleged that Salinas threatened Martinez and Carrillo-Guerrero with imminent bodily injury and used or exhibited a firearm during the assault. Salinas testified during his trial and disputed that a weapon was used during the commission of the offense. During closing argument, defense counsel focused on the fact that the police did not recover a gun in this case and challenged the credibility of the witnesses who testified that Salinas had a gun. Defense counsel also argued that if the jury were to find Salinas guilty, they should find him guilty of the lesser-included offense of misdemeanor assault. Similarly, during its closing argument, the State addressed the testimony that Salinas had a gun and noted that, from Salinas's perspective, the police had him "red handed" and "[a]ll they don't have is that gun."

After reviewing the evidence admitted for the jury's consideration, the State's theory, the defense's theory, and the parties' closing arguments, we conclude that assuming, without deciding, the trial court erred when it overruled Salinas's hearsay objection to Officer Helm's testimony, Salinas has not shown that he was harmed by the error.

Issue one is decided against Salinas.

### C. Computer Image of Gun

In issue two, Salinas argues that the printed image of a gun was speculative, not relevant or material, and its prejudicial impact substantially outweighed its probative value because the police never recovered a gun. Salinas contends that he was harmed by the error because the existence of a gun was in dispute and the State used the computer image of a gun to influence the jury in determining a gun had been used during the commission of the alleged offense. The State responds that the printed image of a gun was properly admitted for demonstrative purposes and Salinas was not harmed by its admission. Assuming, without deciding, the trial court erred when it overruled his objection to the admission of the printed image of a gun for demonstrative purposes, we review the alleged error for harm.

First, we examine the evidence admitted for the jury's consideration. The record shows that during the trial, Martinez described the gun Salinas used during the commission of the offenses as a black, metal gun with a clip on the bottom. The State showed a printed image of a gun to Martinez who testified, "It looks similar to the one [Salinas] had" and offered it into evidence for demonstrative purposes only.[1] Salinas objected to the admission of the printed image of a gun for demonstrative purposes on the basis that its prejudicial effect outweighed its probative value. The trial court admitted the exhibit for demonstrative purposes. Also, Carrillo-Guerrero stated that the weapon was a black, ".45 angled gun with a clip." The State showed Carrillo-Guerrero the printed image of a gun that had been admitted into evidence and he stated, without objection, that he went through some photos on the prosecutor's computer and chose the gun in the printed image because it looked like the one Salinas used during the commission of

---

[1] Demonstrative or illustrative evidence is an object which replicates or is similar to the real thing, but which is admittedly not the very thing itself. *Torres v. State*, 116 S.W.3d 208, 213 (Tex. App.—El Paso 2003, no pet.). Such evidence has no independent relevance to the case, but it is offered to help explain or summarize the witness's testimony or to put events and conditions into a better perspective. *Torres*, 116 S.W.3d at 213.

the offense. The printed image of a gun was never presented by the State as an image of the weapon used in the offense.

Next, we review the closing arguments of counsel. During closing argument, the State did not mention the printed image of a gun. Also, during closing argument, defense counsel stressed the demonstrative nature of the printed image of a gun, stating:

> If there was a gun out there, they would have found it and said this is the gun. The only evidence they have in this case—and this is it. This was printed on this prosecutor's desktop on Tuesday morning or, maybe Monday morning—and [] Carrillo[-Guerrero] or [] Martinez said, well, you know, it kind of looks like it. It had a handle. Yeah, kind of [looks] like that. You know, I have never seen anything before quite like—that remarkable—that they would want to present this as what they think a gun could have looked like if it was used out there.

We conclude that assuming, without deciding, the trial court erred when it overruled Salinas's objection to admission of the printed image of a gun for demonstrative purposes, Salinas has not shown that he was harmed by the alleged error. *See Devis v. State*, 18 S.W.3d 777, 785 (Tex. App.—San Antonio 2000, no pet.) (any error harmless where State did not have actual weapon and demonstrative weapons were never presented by State as weapons used in offense).

Issue three is decided against Salinas.

### III. SENTENCING

In issues three and four, Salinas argues the trial court erred when it failed to orally pronounce his sentence in each case. *See* TEX. CODE CRIM. PROC. ANN. art. 42.03 (West Supp. 2014) ("[S]entence shall be pronounced in the defendant's presence."). Salinas and the State agreed that the appropriate remedy was to abate these appeals so that the trial court could orally pronounce Salinas's sentences in his presence. *See Meachum v. State*, 273 S.W.3d 803, 806 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (when trial court fails to orally pronounce sentence in defendant's presence, abate is proper and more efficient remedy). Accordingly, these

–9–

appeals were abated, the trial court orally pronounced Salinas's sentences in his presence, a supplemental reporter's record of the sentencing was filed in this appeal, and these appeals were reinstated. We conclude these issues no longer present anything for our review.

Issues three and four are moot.

### IV. CONCLUSION

Assuming, without deciding, the trial court erred when it overruled Salinas's hearsay objection to the police officer's testimony and his objection to the admission of a printed image of a gun for demonstrative purposes, we conclude Salinas has not shown that he was harmed by the alleged errors. Also, because this appeal was abated and the trial court orally pronounced Salinas's sentences in both cases, his issues complaining that the trial court failed to orally pronounce his sentence are moot.

The trial court's judgments are affirmed.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE


Do Not Publish
Tex. R. App. P. 47
131665F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EDUARDO SALINAS, Appellant

No. 05-13-01665-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F-1263779-K.
Opinion delivered by Justice Lang. Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 31st day of July, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EDUARDO SALINAS, Appellant

No. 05-13-01666-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas
Trial Court Cause No. F-1263780-K.
Opinion delivered by Justice Lang. Justices
Bridges and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 31st day of July, 2015.