COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
MICHAEL RUBIO,                                            )                  No. 08-04-00325-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  346th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20040D04632)

O P I N I O N

            This case arises out of a traffic accident in a trendy entertainment district known as Kern
Place which is located near the University of Texas at El Paso. Restaurants and clubs line both sides
of the main thoroughfare as well as several side streets. There is considerable pedestrian traffic as
patrons walk between establishments and to and from their parked cars. Michael Rubio appeals his
two-count conviction of manslaughter in the deaths of two such pedestrians. The jury assessed
punishment at ten years’ confinement for each count. We affirm.
FACTUAL SUMMARY
            On November 26, 2003, Appellant celebrated with friends, starting at Hooter’s where they
ate and drank some beer. Around 1 a.m., the group moved on to the O2 Bar at Mesa and Cincinnati
Streets in Kern Place and left at 2 a.m. when the bar closed. Appellant and his passengers, Joseph
Rodriguez and Yadira Esais, then drove to Village Inn to use the restroom before heading to a
friend’s house on the east side of town. Appellant drove back toward the bar to meet Terry Ibarra
who planned to follow Appellant across town to make sure he arrived home safely. In the meantime,
Ibarra phoned Appellant to ask where he was. As Appellant approached the intersection of Mesa and
Cincinnati, he hit Alexis Olivares and Alejandra Gutierrez who were trying to cross the street. Both
died within minutes of the accident due to severe head injuries. Ibarra testified she was on the phone
with Appellant at the time of the accident.



            When police arrived at the scene, they noticed that Appellant exhibited signs of intoxication.
He had slurred speech, bloodshot glossy eyes, droopy eyelids, swayed balance, and a strong odor of
alcohol. Appellant failed the field sobriety test. He was arrested and transported to R.E. Thomason
Hospital. Blood was drawn from Appellant at 4 a.m., and the lab results indicated a blood alcohol
content of .17.
            Police recovered data from Appellant’s vehicle. His Yukon Denali was equipped with an
air bag sensing module that records information upon heavy impact. The sensors reported that
Appellant was traveling at a constant rate of speed of 47 m.p.h. and that he did not brake prior to
impact. The speed limit at the intersection is 35 m.p.h. and there were no skid marks at the scene
of the accident.
            Appellant was indicted under cause number 20040D01226 for two counts of intoxication
manslaughter. This indictment was later dismissed and he was then re-indicted under cause number
20040D04632 for two counts of intoxication manslaughter and two counts of manslaughter. Each
count alleged Appellant used his motor vehicle as a deadly weapon during commission of the
offense. The jury found Appellant guilty of two counts of manslaughter and assessed punishment
at ten years’ confinement for each count. The trial court entered judgment in accordance with the
jury’s verdict, including a deadly weapon finding.
CHARGE ERROR
            In his first three issues for review, Appellant complains of charge error. In reviewing charge
error, we employ a two-step analysis. First, we view the charge as a whole to determine whether
error actually exists. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). Our review
is not limited to a series of isolated statements or portions of the charge standing alone. Torres v.
State, 116 S.W.3d 208, 211 (Tex.App.--El Paso 2003, no pet.). Second, we must determine whether
sufficient harm resulted from the error so as to require reversal. Almanza, 686 S.W.2d at 171;
Washington v. State, 930 S.W.2d 695, 698 (Tex.App.--El Paso 1996, no pet.). Which harm analysis
applies depends upon whether the defendant objected. Torres, 116 S.W.2d at 211. If a timely 
objection was made at trial, we will reverse if as a result of the error there was some harm to the
defendant. Almanza, 686 S.W.2d at 171. If the defendant failed to object, we will reverse only if
the error was fundamental and the defendant suffered egregious harm. Id. In order to assess the
degree of harm, we examine the error in light of the entire jury charge, the state of the evidence,
including the contested issues and the weight of the probative evidence, the arguments of counsel,
and any other relevant information. Id.
Disjunctive Jury Charge
            In his second issue, Appellant contends the charge did not require the jury to unanimously
agree on the verdict. He complains that the charge incorrectly inserted intoxication manslaughter in
the manslaughter charge by alleging he was driving while under the influence of alcohol. He also
contends that driving while under the influence is a separate criminal offense so that the trial court’s
use of the disjunctive “or” precluded the jury from unanimously agreeing on the specific criminal
acts he was alleged to have committed.
            Four counts were presented in the charge. Counts 2 and 4 involved manslaughter while
Counts 1 and 3 alleged intoxication manslaughter. The relevant portion reads:
Now if you find from the evidence beyond a reasonable doubt that on or about the
27th day of November, 2003, in El Paso County, Texas, the Defendant, MICHAEL
RUBIO, did then and there recklessly cause the death of an individual, namely
[Victim], by driving the motor vehicle of MICHAEL RUBIO at a speed greater than
the posted speed limit, or by talking on a phone while driving, or by driving while
under the influence of alcohol, or by any combination of the above three acts, thereby
causing the motor vehicle driven by MICHAEL RUBIO to collide with [Victim], a
pedestrian, then you will find the Defendant, MICHAEL RUBIO, guilty as charged
in [Count 2 and Count 4] of the Indictment [Verdict Form C and Verdict Form I] and
[next proceed to consider Count 3 and not consider Criminally Negligent Homicide
in the two paragraphs below].

            Jury unanimity is required in felony cases. Ngo v. State, 175 S.W.3d 738, 745
(Tex.Crim.App. 2005). In this context, unanimity means that each and every juror agrees that the
defendant committed the same, single, specific criminal act. Ngo, 175 S.W.3d at 745. Unanimity
ensures that each juror is convinced beyond a reasonable doubt that the prosecution proved each
essential element of the offense. Jefferson v. State, 189 S.W.3d 305 (Tex.Crim.App. 2006), citing
State v. Johnson, 627 N.W.2d 455, 459-60 (Wis. 2001). In reviewing a disjunctive jury charge, we
first determine whether the application paragraphs contain different criminal acts or whether they
merely instruct as to different means of committing a single offense. Ngo, 175 S.W.3d at 744;
Milam v. State, 2006 WL 304528 at * 7 (Tex.App.--El Paso 2005, pet. ref’d)(not designated for
publication); Holford v. State, 177 S.W.3d 454, 461 (Tex.App.--Houston [1st Dist.] 2005, pet. ref’d). 
If the disjunctive paragraphs merely inform the jury of different means of committing a single
offense, then the jury need not unanimously agree on which alternative means the defendant used
to commit the offense. Milam, 2006 WL 304528 at *7; Holford, 177 S.W.3d at 462. 
            If the charge describes how the defendant committed the criminal act as opposed to whether
he committed the act, then jury unanimity is not required. Ngo, 175 S.W.3d at 745-46; see Jefferson,
189 S.W.3d at 311-14. To determine what criminal act has been prohibited by statute, a handy rule
of thumb is to look to the statutory verb defining the criminal act. Ngo, 178 S.W.3d at 746 n.24. 
Here, the issue was manslaughter. Under the manslaughter statute, the prohibited criminal act is
causing the death of an individual and how a person commits manslaughter is by reckless behavior. 
Recklessness is defined as a conscious disregard of a substantial and unjustifiable risk that the
circumstances exist or the result will occur. Tex.Penal Code Ann. § 6.03 (Vernon 2003). Here,
the charge alleged Appellant was reckless: (1) in driving a motor vehicle at a speed greater than the
posted speed limit, (2) in talking on a cell phone while driving, (3) in driving under the influence of
alcohol, or (4) by any combination of the above three acts. 
            Appellant contends that driving while under the influence of alcohol is a separate criminal
act of intoxication manslaughter. We disagree. “Driving under the influence of alcohol” is not the
same as “driving while intoxicated.” The latter suggests a person who was driving in a public place
had lost normal use of either mental or physical faculties or had a blood alcohol concentration of .08
or more. Tex.Penal Code Ann. § 49.01, 49.08 (Vernon 2003). The former suggests a person was
driving after having consumed alcohol without requiring any determination as to the illegality of
situation. Buie v. State, 2003 WL 21189757 at *2 (Tex.App.--Austin 2003, no pet.)(a jury can
determine whether a person’s driving after consuming alcohol shows requisite degree of risk without
having to consider if the consumption of the substance deprived him of his normal use of his
physical and mental faculties). The fact that one may legally drive after consuming alcohol does not
prevent the State from alleging the driver was reckless in doing so. Id. Thus, the actions of driving
under the influence of alcohol can be used to show a conscious disregard of a substantial risk. We
overrule Issue Two. 
Deadly Weapon Finding
            We will consider Appellant’s first and third issues together because they both deal with the
deadly weapon finding. In his first issue, Appellant argues the charge failed to place upon the State
the proper burden of proof of beyond a reasonable doubt regarding a deadly weapon finding. In his
third issue, he contends the trial court erred by precluding a negative finding of a deadly weapon in
the verdict form. Because he did not raise either of these issues at trial, we will reverse only if the
error resulted in egregious harm.


 Almanza, 686 S.W.2d at 171. 
            If the jury is the trier of fact, a trial court may only enter an affirmative finding of a deadly
weapon if: (1) the deadly weapon was specifically pled as such in the indictment, (2) the weapon
pled is per se a deadly weapon, or (3) a special issue is submitted and answered affirmatively. Polk
v. State, 693 S.W.2d 391, 396 (Tex.Crim.App. 1985). Here, the deadly weapon finding was
specifically pled in the indictment. The verdict stated, “We, the Jury, find the Defendant, MICHAEL
RUBIO, Guilty of Manslaughter as charged in [Count 2 and Count 4] of the indictment.” Counts
2 and 4, differing only in the identity of the victim, provided:
And the Grand Jurors of aforesaid, upon their oaths aforesaid, do further say, charge
and present in and to said Court at said term that on or about the 27th day of
November, 2003 and anterior to the presentment of this indictment, in the County
of El Paso and State of Texas, MICHAEL RUBIO, hereinafter referred to as
Defendant,

            PARAGRAPH A
did then and there recklessly cause the death of an individual, namely, [Victim], by
driving the motor vehicle of MICHAEL RUBIO at a speed greater than the
posted speed limit thereby causing the motor vehicle driven by MICHAEL
RUBIO to collide with [Victim], a pedestrian,
 
PARAGRAPH B
did then and there recklessly cause the death of an individual, namely, [Victim], by
talking on the phone while driving thereby causing the motor vehicle driven by
MICHAEL RUBIO to collide with [Victim], a pedestrian,
 
PARAGRAPH C
did then and there recklessly cause the death of an individual, namely, [Victim], by
driving while under the influence of alcohol thereby causing the motor vehicle
driven by MICHAEL RUBIO to collide with [Victim], a pedestrian,
 
And it is further presented that said Defendant did use and exhibit a deadly weapon,
to-wit: a motor vehicle, that in the manner of its use and intended use was capable
of causing death and serious bodily injury, during the commission of and immediate
flight from said felony offense,

            AGAINST THE PEACE AND DIGNITY OF THE STATE.





            We agree that before an affirmative finding of a deadly weapon can be made, the State must
prove beyond a reasonable doubt that the defendant used a deadly weapon. Hill v. State, 913 S.W.2d
581, 583 (Tex.Crim.App. 1996). But we disagree that the charge required a separate finding and
failed to properly place the burden of proof on the State. First, the jury made their affirmative
finding in compliance with Polk because they found Appellant guilty of manslaughter as charged in
the indictment. Polk, 693 S.W.2d at 396. Second, even if we were to assume error, the failure to
instruct the jury on the burden of proof regarding the deadly weapon was not egregious. The jury
was properly instructed that the State had the burden of proof of beyond a reasonable doubt
throughout the trial, and in both the general instructions and the manslaughter application paragraphs
of the charge. We conclude that Appellant did not suffer egregious harm. Delgadillo v. State, 2004
WL 1375404 at * 10-11 (Tex.App.--El Paso 2004, pet. ref’d). 
            In support of his arguments, Appellant relies on Apprendi v. New Jersey, 530 U.S. 466, 490,
120 S.Ct. 2348, 2362- 63, 147 L.Ed.2d 435 (2000) and Olivas v. State, 153 S.W.3d 108, 115
(Tex.App.--Waco 2004, pet. granted). In Apprendi, the Supreme Court held that any fact which
increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a
jury and proven beyond a reasonable doubt. Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63. 
Appellant claims the affirmative deadly weapon finding increases his penalty because it requires him
to serve half of his sentence. Tex.Code Crim.Proc.Ann. art. 37.07 § 4(a)(Vernon Supp. 2006). 
Although an affirmative deadly weapon finding impacts a defendant’s parole eligibility, it does not
extend the statutory range of punishment. Tex.Penal Code Ann. § 19.04 (Vernon 2003). The
punishment imposed here was within the statutory range of two to twenty years. Tex.Penal Code
Ann. § 12.33. Consequently, Apprendi is inapplicable.
            We believe Olivas is inapplicable as well. There, the charge added an extra question on the
verdict form after the jury had determined whether Olivas had evaded arrest using a vehicle:
 
Answer the Deadly Weapon Question only if you have found the defendant guilty. 
Otherwise do not answer the Deadly Weapon Question.

            DEADLY WEAPON
 
WE, THE JURY, find the defendant RAYMOND OLIVAS did use a deadly weapon
during the commission of the offense alleged in the indictment. [Emphasis in
original.]

            ______________________
            PRESIDING JUROR
 
WE, THE JURY, find that the defendant, RAYMOND OLIVAS, did not use a
deadly weapon during the commission of the offense alleged in the indictment.
[Emphasis in original.]

            ______________________
            PRESIDING JUROR


The divided Waco court first found this unassigned error was fundamental in nature. The charge was
erroneous because it was unclear which party bore the burden of proof and what quantum of proof
was necessary. Olivas, 153 S.W.3d at 115. Here, Appellant complains because the separate issue
was omitted entirely. There could be no confusion where the remainder of the charge clearly
articulated the State had the burden to prove the elements of its case beyond a reasonable doubt. We
overrule Issues One and Three. 
MOTION TO ABATE APPEAL
            Finally, we turn to Appellant’s fourth issue in which he contends that we have effectively
denied his right to effective assistance of counsel because we denied his motion to abate the appeal. 
A few procedural matters are relevant. Appellant was sentenced on October 19, 2004. Trial counsel
timely filed a notice of appeal. On December 30, 2004, trial counsel presented a motion for leave
to file an untimely motion for new trial to then-Judge Richard Roman. Judge Roman signed an order
the same day, granting leave to file. The basis of the motion was that counsel had recently learned
of jury misconduct. For the sake of accuracy, we note that the motion was also filed in the wrong
cause number.
            On February 24, 2005, a hearing took place before the Honorable Angie Juarez Barill, the
newly-elected judge of the 346th District Court. Appellate counsel and the prosecuting attorney
offered arguments as to whether the court had jurisdiction to consider the merits of the motion. After
reviewing the jurisdictional issues, Judge Barill denied the motion.
            Appellant then sought relief in this court, asking us to abate the appeal to allow the trial court
to consider the motion for new trial. We denied the motion on May 23, 2005. Appellant filed a
motion to reconsider the abatement, which we denied on June 8, 2005. Now, in his brief on the
merits, he complains that the failure to abate was error.
            The Court of Criminal Appeals has considered this issue in several contexts. In Drew v.
State, 743 S.W.2d 207 (Tex.Crim.App. 1987), the appellant assigned error to the trial court’s denial
of his untimely motion for new trial due to lack of jurisdiction. He also complained that insofar as
the motion alleged jury misconduct, the court erred in denying the motion without an evidentiary
hearing. The Court of Criminal Appeals concluded that since the trial court lacked authority to
entertain the untimely motion for new trial, it had not erred in refusing to consider allegations of jury
misconduct. Id. at 223.
            In Price v. State, 826 S.W.2d 947 (Tex.Crim.App. 1992), the court of appeals affirmed
conviction as to the issues presented on guilt/innocence. But it abated the appeal concerning a
punishment issue and ordered the trial court to consider the motion for new trial. If the court did not
hold a hearing and rule within thirty days, the intermediate court would reverse the judgment. The
State filed a petition for discretionary review, claiming that the appellate court had not considered
its dispositive issue that the motion for new trial was not timely presented. After first concluding that
the abatement was not an interlocutory order, the Court of Criminal Appeals reversed and remanded
to the intermediate court for a determination of timeliness.
            Several years later, the high court revisited the issue, devoting considerable time to outlining
the cases in which abatement has been addressed. In Oldham v. State, 977 S.W.2d 354
(Tex.Crim.App. 1998), it reversed an order of abatement from the intermediate court of appeals. 
That court had concluded the defendant was denied counsel at a critical stage of the proceedings. 
Oldham had been sentenced on January 13, 1992. Although she had retained trial counsel, she filed
a pro se notice of appeal. Appellate counsel was not appointed until March 16. The Court of
Criminal Appeals reversed, holding that Oldham had made no showing that she was denied counsel
during this period of time, nor had she overcome the presumption that counsel had acted effectively. 
Id. at 363. It also concluded that the intermediate court had erred in relying upon Rule 2(b) of the
Texas Rules of Appellate Procedure as a mechanism to extend the time limits for the filing of a
motion for new trial. Id. at 360. In two more recent cases, the court dismissed the State’s petitions
for discretionary review complaining of the double abatement proceedings utilized in Houston
because the appellate abatements were interlocutory and not appealable. See Jack v. State, 149
S.W.3d 119 (Tex.Crim.App. 2004); Smith v. State, 131 S.W.3d 502 (Tex.Crim.App. 2004). 
            Here, Appellant was represented at trial and in the post-sentencing stage. Trial counsel filed
a proper notice of appeal. Although the motion for new trial was not filed until 72 days after
sentencing, the record reveals that the untimeliness was not due to the absence of counsel. The
motion was untimely because counsel had just learned information suggesting the possibility of
jury misconduct. To the extent allegations of ineffective assistance may be urged against trial
counsel for his failure to learn of the purposed misconduct earlier, Appellant may avail himself of
his post-conviction remedies via habeas corpus. We are not to be understood as holding that
abatement is never proper to discern whether an appellant has been denied counsel at a critical stage
of the proceedings. Instead, our holding is limited to those circumstances where the record
conclusively establishes otherwise. We overrule Issue Four. Having overruled all issues for review,
we affirm the judgment of the court below.

August 29, 2006                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Publish)