COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




ZON EDWARD THOMAS,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00247-CR



Appeal from the


86th Judicial District Court


of Kaufman County, Texas 


(TC# 21524) 



O P I N I O N 


 Zon Edward Thomas appeals his conviction for possession of more than one but less than
four grams of methamphetamine. In three issues, he argues that: (1) officers lacked reasonable
suspicion to suspect him of speeding, therefore, the evidence discovered during a search of his
vehicle should not have been admitted at trial; (2) the trial court erred in denying his motion to
suppress because the extended detention was unlawful; and (3) the trial court erred by refusing to
submit his requested jury instruction. We affirm.

 In July 2002, Appellant and his passenger were driving in Kaufman County, Texas. 
Texas Department of Public Safety Trooper Maury Buford and Trooper Lance Yager were on
patrol that evening. At approximately 11 p.m., Trooper Buford noticed Appellant traveling in his
direction and visually estimated his speed to be sixty miles per hour in a posted fifty-five mile an
hour zone. Trooper Buford confirmed Appellant's speed of sixty-two miles an hour by use of a
radar device. Trooper Buford testified that he believed Appellant's speed was unsafe due to
darkness, the narrow width of the road, the lack of a shoulder, and because Appellant was
approaching a bend in the road. Trooper Buford then conducted a routine traffic stop. 

 After Appellant pulled over on the shoulder of the road, Trooper Buford approached his
vehicle. Trooper Buford asked Appellant to step to the rear of his vehicle and into the ditch
running alongside the roadway and requested his drivers license. According to Trooper Buford's
testimony at trial, Appellant's hands were trembling and he was unable to stand still. Trooper
Buford questioned Appellant about the passenger Becky Robinson (Webb) and Appellant
indicated that she was his girlfriend. While Trooper Buford questioned Appellant, Trooper
Yeager questioned Ms. Robinson. According to Trooper Buford, because of Appellant's
nervousness and the inconsistent answers concerning the passenger, Trooper Buford asked to
search Appellant's vehicle. Appellant gave Trooper Buford permission to seach.

 Trooper Yeager conducted the search of Appellant's automobile and discovered a bag
containing a quantity of methamphetamine and marihuana. According to Trooper Buford, when
Appellant was asked about the drugs, he indicated that they were his and the passenger did not
know anything about them. Appellant was then placed under arrest. A jury found Appellant
guilty of possession of methamphetamine in an amount of one gram or more but less than four
grams. The trial court sentenced Appellant to eight years confinement in the Institutional
Division of the Texas Department of Criminal Justice and assessed a fine of $1,000. Appellant
timely filed his notice of appeal.

Standard of Review

 In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard
of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). At a suppression
hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony and may accept or reject all or any part of a witness's
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). Accordingly, we do not
engage in our own factual review of the trial court's decision. Romero v. State, 800 S.W.2d 539,
543 (Tex.Crim.App. 1990). We give almost total deference to the trial court's ruling on
questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor. Johnson v. State, 68 S.W.3d 644, 652-53 (Tex.Crim.App. 2002). On
the other hand, mixed questions of law and fact that do not turn on the credibility and demeanor
of a witness are reviewed de novo. Id.

 When the trial court makes no express findings of fact, as here, we review the evidence in
the light most favorable to the trial court's ruling. Carmouche, 10 S.W.3d at 327-28. We will
assume that the trial court made implicit findings of fact that support the ruling as long as those
findings are supported by the record. Walter v. State, 28 S.W.3d 538, 540 (Tex.Crim.App.
2000). In determining whether the record supports a trial court's decision, we generally consider
only evidence presented at the suppression hearing because the ruling was based on it rather than
the evidence introduced later. Rachal v. State, 917 S.W.2d 799, 809 (Tex.Crim.App. 1996). 
However, this general rule is inapplicable where the suppression issue has been consensually
re-litigated by the parties during a trial on the merits. Id. We will uphold the trial court's ruling
if it is correct on any theory of law applicable to the case. Ross, 32 S.W.3d at 855-56.

 In Issue One, Appellant complains the trial court erred by admitting the physical evidence
because Trooper Buford lacked reasonable suspicion to conduct a traffic stop and the evidence
obtained during the subsequent search of his vehicle was inadmissible as fruit of the poisonous
tree. Specifically, Appellant contends Trooper Buford lacked probable cause to stop his vehicle
because: (1) Officer Buford's visual estimate of Appellant's speed did not justify reasonable
suspicion; and (2) the radar measurement of Appellant's speed is inadmissible. We construe
Appellant's argument as a challenge to the trial court's ruling on his motion to suppress. An
officer's temporary detention is lawful if based on reasonable suspicion that an individual is
violating the law. Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). Reasonable
suspicion exists if the officer has specific, articulable facts that when combined with rational
inferences from those facts, would lead him to reasonably conclude that a particular person
actually is, has been, or soon will be engaged in criminal activity. Id. Whether an officer has
reasonable suspicion to make an investigatory stop must be based on an objective standard and
we must consider the totality of the circumstances at the time of the stop. Icke v. State, 36
S.W.3d 913, 915 (Tex.App.--Houston [1st Dist.] 2001, pet. ref'd).

 Ordinarily, a violation of a traffic law committed in view of a police officer is sufficient
authority for a traffic stop. See Lemmons v. State, 133 S.W.3d 751, 756 (Tex.App.--Fort Worth
2004, pet. ref'd). A person commits a traffic offense if he drives at a speed greater than is
reasonable and prudent under the circumstances. Tex.Transp.Code Ann. § 545.351(a)(Vernon
1999). Under the Texas Transportation Code, a speed in excess of the limits established by
Subsection (b) or under another provision of this subchapter is prima facie evidence that the
speed is not reasonable and prudent and that the speed is unlawful. Tex.Transp.Code Ann.
§ 545.352(a)(Vernon Supp. 2006).

 Here, Trooper Buford testified that he observed Appellant traveling at what appeared to
him to be a high rate of speed. We note that an officer's visual estimates of speed can suffice to
establish reasonable suspicion to conduct a traffic stop. See Hesskew v. Texas Dept. of Public
Safety, 144 S.W.3d 189, 191 (Tex.App.--Tyler 2004, no pet.); Icke, 36 S.W.3d at 916. In
addition to Officer Buford's visual estimation, Appellant's speed was confirmed by use of a radar
device. The radar unit indicated Appellant was driving sixty-two miles per hour in a fifty-five
mile per hour zone. In most cases, when an officer observes an automobile traveling at a high
rate of speed and confirms speed by use of radar, the resulting traffic stop is reasonable. See
Perales v. State, 117 S.W.3d 434, 438 (Tex.App.--Corpus Christi 2003, pet. ref'd). Even if the
radar reading is ultimately shown to be inaccurate or false, when an officer relies on radar to
conduct a traffic stop, he has developed reasonable suspicion that a defendant was speeding. 
Icke, 36 S.W.3d at 916.

 In considering the totality of circumstances and in viewing the evidence in the light most
favorable to the trial court's ruling, we conclude the traffic stop initiated by Trooper Buford was
based on a reasonable suspicion that Appellant had committed a traffic violation. Accordingly,
the trial court did not err in overruling Appellant's motion to suppress on the basis of lack of
reasonable suspicion to conduct a traffic stop. Issue One is overruled.

 In Issue Two, Appellant argues the trial court erred in denying his motion to suppress
because even if the initial stop was supported by probable cause, "[n]o reasonable suspicion
existed that [Appellant] and his passenger were committing any offense" and thus any extended
detention was unlawful. Further, any evidence found as a result of the unlawful detention was
inadmissible as fruit of the poisonous tree. In addition, Appellant argues because his consent was
not voluntary, it did not dissipate the taint of the Fourth Amendment violation.

 An officer's investigative detention must be temporary and may last no longer than is
necessary to effectuate its purpose. Davis v. State, 947 S.W.2d 240, 244-45 (Tex.Crim.App.
1997). A search that is reasonable at its inception may violate the Fourth Amendment by virtue
of its excessive intensity and scope. See id. at 243. To determine the reasonableness of an
investigative detention, we apply the Terry test: (1) whether the officer's action was justified at
its inception; and (2) whether it was reasonably related in scope to the circumstances that
justified the initial interference. Kothe v. State, 152 S.W.3d 54, 63 (Tex.Crim.App. 2004).

 Having determined the validity of the initial stop in Issue One, we turn to the second
prong of the analysis, whether Trooper Buford's actions were reasonably related to the
circumstances that justified the initial interference. See id. During a routine traffic stop, an
officer has the right to check for outstanding warrants and request information such as a driver's
license, insurance papers, identification, and car registration information. See Kothe, 152 S.W.3d
at 63-4; Davis, 947 S.W.2d at 245 n.6. In addition, the officer may also question the driver about
ownership of the vehicle, destination, and the purpose of the trip. See Powell v. State, 5 S.W.3d
369, 377 (Tex.App.--Texarkana 1999, pet. ref'd).

 If, during the course of a valid investigative detention, the officer develops a reasonable
suspicion that the detainee was engaged in, or soon would engage in criminal activity, a
continued detention is justified. Freeman v. State, 62 S.W.3d 883, 888 (Tex.App.--Texarkana
2001, pet. ref'd), citing Davis, 947 S.W.2d at 245. An officer may rely on all the facts
ascertained during the course of his contact with a defendant to develop articulable facts which
would justify a continued detention. Sims v. State, 98 S.W.3d 292, 295 (Tex.App.--Houston [1st
Dist.] 2003, pet. ref'd).

 Appellant asserts that Trooper Buford's traffic investigation was complete and "[t]he
extended detentions of [Appellant] and Becky was unlawful." We point out that a traffic stop
investigation is not fully resolved until a computer check is completed, the officer knows that the
driver has a currently valid license, no outstanding warrants, and the car is not stolen, and the
officer issues either a citation or warning. See Kothe, 152 S.W.3d at 63-4; Powell, 5 S.W.3d at
378-79. When the traffic investigation is fully resolved, the detention must end and the subject
must be permitted to leave absent reasonable suspicion of other criminal activity. Kothe, 152
S.W.3d at 64.

 Here, the record is devoid of any indication that the traffic investigation was complete
and Trooper Buford improperly detained Appellant in hopes of finding evidence of other
criminal activity. On the contrary, although Trooper Buford stated that a check for warrants was
returned as negative, he also testified that he did not recall ever writing Appellant a citation for
speeding. In addition, Trooper Buford testified that it would not have been uncommon for him to
disregard a less serious offense upon discovery of the greater. Although unclear, it appears from
the record that Trooper Buford obtained consent to search Appellant's vehicle prior to
completion of his traffic stop investigation. It is not until the original purpose of the stop is
concluded that an officer may not unnecessarily detain a suspect. Kothe, 152 S.W.3d at 64. In
this case, there is no evidence that Trooper Buford failed to diligently pursue his investigation or
unreasonably detained Appellant after the purposes of the traffic stop were complete.

 In any event, even assuming the facts of this case were as Appellant presents and the
traffic stop was complete, Trooper Buford's suspicions were based on a reasonable suspicion
developed before he issued a citation. See Powell, 5 S.W.3d at 379. Appellant was traveling at a
late hour in an area known by Trooper Buford as a "very high drug area, a lot of
methamphetamine, a lot of burglaries, a lot of drunks, things like that." Trooper Buford stated
that during the stop, he felt Appellant was a "little more nervous than usually than someone you
might stop for speeding." Trooper Buford also testified that as Appellant handed him his driver's
license, "his hands were trembling. He was fidgeting around and couldn't stand in one place." 
Trooper Buford also stated that when someone exhibited such a high degree of nervousness, it
indicated that illegal activity might be occurring. When Trooper Buford asked Appellant about
the passenger, he identified her as "Becky Robinson" and claimed to have been in a romantic
relationship with her for eight years. When Trooper Yager questioned the passenger, she
indicated that her name was "Becky Webb." We find that these specific and articulable facts,
when coupled with reasonable inferences therefrom, and considered in light of Trooper Buford's
experience and personal knowledge, were sufficient to reasonably justify an extended detention
of Appellant.

 As it relates to Appellant's sub-issue, because neither the initial stop nor its duration
violated the Fourth Amendment, Appellant's consent to search was not unconstitutionally
tainted. See Kothe, 152 S.W.3d at 67. We now address whether Appellant voluntarily gave
consent to search his vehicle. Under the Fourth and Fourteenth Amendments, a search conducted
without a warrant issued on probable cause is per se unreasonable unless it falls within one of the
well-established exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S.
218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973); Reasor v. State, 12 S.W.3d 813, 817
(Tex.Crim.App. 2000). Consent to search is one of the well-established exceptions to the
constitutional requirements of both a warrant and probable case. Carmouche, 10 S.W.3d at 331,
citing Schneckloth, 412 U.S. at 219, 93 S.Ct. at 2043-44. To show that the search was made with
the property owner's consent and thus trigger the consent exception to the warrant requirement,
the State must prove by clear and convincing evidence, based on the totality of the circumstances,
that the defendant gave consent freely and voluntarily. Reasor, 12 S.W.3d at 818. For consent to
be voluntary, the consent must "'not be coerced, by explicit or implicit means, by implied threat
or covert force.'" Carmouche, 10 S.W.3d at 331, citing Schneckloth, 412 U.S. at 228, 93 S.Ct. at
2048.

 The record reflects that after Appellant pulled over on the side of the road, Trooper
Buford asked him to step to the rear of the vehicle for safety. Trooper Buford testified that when
he asked Appellant to search his vehicle, Appellant unequivocally gave his verbal consent. There
is no indication that Appellant was pulled from his vehicle or placed in handcuffs or was in any
other way physically restrained. In addition, there is nothing in the record to indicate Appellant
was coerced into giving his consent by force or threat, either express or implied. In fact, Trooper
Buford testified that he did not threaten, coerce, or make any promises or other inducements to
Appellant before asking for his consent to search. See Martinez v. State, 17 S.W.3d 677, 683
(Tex.Crim.App. 2000)(testimony of officers that no coercion involved in obtaining consent,
some evidence of the voluntary nature of the consent). Viewing the totality of the circumstances
surrounding the statement of consent, we find the record supports the finding that Appellant's
consent was freely and voluntarily given.

 Having determined that the initial traffic stop was valid, Appellant was not unreasonably
detained after the purpose of the traffic stop was complete and even if the traffic stop was
complete, the continued detention of Appellant was based on reasonable suspicion, and
Appellant's consent to search his vehicle was given voluntary, we conclude there was no
unconstitutional search or seizure. Accordingly, the trial court did not err in denying Appellant's
motion to suppress. Issue Two is overruled.

 In Issue Three, Appellant argues the court's charge to the jury was erroneous for failing to
fully inform the jury that to show possession, the State must prove that the accused exercised
care, control, and management over the contraband and furthermore, the accused knew the
substance was contraband. Additionally, Appellant argues the court's charge was erroneous for
failing to inform the jury of the factors that link an accused to contraband.

 We utilize a two-step process when reviewing charge error. Torres v. State, 116 S.W.3d
208, 210 (Tex.App.--El Paso 2003, no pet.). First, we determine whether error actually exists in
the charge. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). Our review is not
limited to a series of isolated statements or portions of the charge standing alone. Torres, 116
S.W.3d at 211. Second, if error exists, we must determine whether sufficient harm was caused
by the error to warrant reversal. Almanza, 686 S.W.2d at 171; Rubio v. State, 203 S.W.3d 448,
451 (Tex.App.--El Paso 2006, pet. ref'd). If the charge error was the subject of timely objection,
such as here, reversal is required if that error results in some harm. Almanza, 686 S.W.2d at 171;
Rodriguez v. State, 90 S.W.3d 340, 360 (Tex.App.--El Paso 2001, pet ref'd). Degree of harm is
examined in light of the entire jury charge, the state of the evidence, including the contested
issues and weight of probative evidence, the argument of counsel and any other relevant
information revealed by the record of the trial as a whole. Almanza, 686 S.W.2d at 171;
Rodriquez, 90 S.W.3d at 360.

 The trial court's charge to the jury must set forth the law applicable to the case.
Tex.Code Crim.Proc.Ann. art. 36.14 (Vernon 2007). The trial court must instruct the jury on
each element of the offense or offenses charged and include in its charge each statutory definition
that affects the meaning of an element of the offense. Murphy v. State, 44 S.W.3d 656, 661
(Tex.App.--Austin 2001, no pet.). If a phrase, term, or word is statutorily defined, the trial court
must submit the statutory definition to the jury. Miramontes v. State, --- S.W.3d ----, ---, 2005
WL 2095101, *10 (Tex.App.--El Paso 2005, no pet.); Moore v. State, 82 S.W.3d 399, 408
(Tex.App.--Austin 2002, pet ref'd).

 In this case, the trial court's charge tracked the language of the statute. Specifically, the
charge stated that "a person commits an offense if he knowingly or intentionally possesses a
controlled substance. Methamphetamine is a controlled substance in penalty group 1." See
Tex.Health & Safety Code Ann. § 481.102(6)(Vernon Supp. 2006); Tex.Health & Safety
Code Ann. § 481.115 (Vernon 2003). The trial court's charge also defined possession as "actual
care, custody, control or management." See Tex.Health & Safety Code Ann. § 481.002(38)
(Vernon Supp. 2006) . In addition to possession, the charge also defined intentionally,
knowingly, controlled substance, adulterant or dilutant, and law of parties.

 Appellant objected to the charge and sought to include the following:

 To show possession of a controlled substance, the State must prove two
elements: (1) the accused exercised care, control, and management over the
contraband; and (2) the accused knew the substance was contraband. Possession
is more than being where the action is. Possession means dominion and control. 
If the accused does not exclusively possess the place where the authorities find the
contraband, the State does not prove the two elements of possession unless
additional independent facts affirmatively link the accused to the contraband.


 Facts surrounding a search and arrest that link an accused to contraband
include:


 (1) the search turned up drugs in plain view or in areas "private" to the
accused,


 (2) the drugs were conveniently accessible to the accused,


 (3) other drugs or paraphernalia not included in the charge were present,


 (4) the accused had cash and weapons,


 (5) eyewitnesses had seen the accused with the drugs, and,


 (6) the accused fled the scene.


 The State need not show a precise set of facts to prove possession. A
circumstantial case is legally sufficient when some of the factors appear in
concert. One factor alone does not support a finding of an affirmative link.


Appellant was not entitled to this "affirmative links" instruction. See Gilbert v. State, 874
S.W.2d 290, 297 (Tex.App.--Houston [1st Dist.] 1994, pet. ref'd); see also Davila v. State, 749
S.W.2d 611, 614 (Tex.App.--Corpus Christi 1988, pet. ref'd). Consequently, the trial court did
not err in refusing to submit Appellant's requested instruction. Issue Three is overruled.

 We affirm the trial court's judgment.



May 10, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)