COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| IN THE MATTER OF E.A., A JUVENILE. | § | No. 08-12-00183-CV |
| | § | Appeal from the |
| | § | 65th District Court |
| | § | of El Paso County, Texas |
| | § | (TC#1100674) |
| | § | |

## **O P I N I O N**

E.A., a juvenile, was adjudicated as having engaged in delinquent conduct after a jury found he had committed the offense of aggravated assault with a deadly weapon, a second-degree felony. After finding a disposition should be made, the jury assessed a determinate sentence of ten years' commitment to the Texas Juvenile Justice Department. E.A. appeals from the adjudication and disposition orders. E.A. raises two issues for our review. We affirm.

### BACKGROUND

The State filed its first amended petition based on delinquent conduct and notice of intent to seek a determinate sentence under the Texas Family Code alleging the E.A. had engaged in delinquent conduct. This petition charged that E.A. intentionally, knowingly, or recklessly caused bodily injury of the complaining witness by (1) striking him about the head with a baseball

bat, (2) by kicking him about the face with the foot, and (3) kicking him about the ribs with the foot. After the adjudication hearing, the jury found that E.A. had engaged in delinquent conduct by committing the offense of aggravated assault with a deadly weapon. The following day, the bailiff informed the trial court that a juror had notified him that a spectator was seen "mad-dogging" the jurors after the verdict was read in court and that another had observed the spectator standing at the parking garage exit, watching the vehicles exit. E.A.'s counsel asked that a record be made and then proceeded to move for a mistrial which the trial court denied.

At the close of the disposition hearing, the jury (1) found that a disposition was required in this case, (2) sentenced E.A. to the Texas Juvenile Justice Department with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice for ten years, (3) refused to place E.A. on probation as an alternative to committing him to the TDCJ, and (4) found E.A. could not be provided with the quality of care, level of support, and supervision needed to meet the conditions of probation in his home or elsewhere. The trial court subsequently imposed a determinate sentence of ten years, and ordered that E.A. be committed to the care, custody, and control of the TJJD. This appeal followed.

## DISCUSSION

In two issues, E.A. contends that the trial court erred by failing to grant his motion for mistrial and by "instructing the jury in such a manner as to not allow the jury to assess a determinate disposition/punishment."

### Motion for Mistrial

#### *Standard of Review*

A mistrial is a device used to halt trial proceedings when error is so prejudicial that

2

expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999); *see also Simpson v. State*, 119 S.W.3d 262, 272 (Tex.Crim.App. 2003). A trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached. *Ladd*, 3 S.W.3d at 567. Whether an error calls for a mistrial is determined by the particular facts of the case. *Id*. We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 292 (Tex.Crim.App. 2010). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id*.

## Spectator Misconduct

In Issue One, E.A. contends the trial court abused its discretion in denying his motion for mistrial after the jury expressed experiencing fear due to a spectator's antagonistic conduct towards the jury. E.A. asserts that because a spectator "mad-dogged" the jury in open court and at the designated exit of the El Paso County Parking Garage the jury was actually and inherently prejudiced and as a result, E.A. was denied due process of law.

The record shows that the bailiff informed the court and parties that a juror had informed him that a spectator in the courtroom was "mad-dogging" the jury shortly after the jury's verdict on adjudication was read in court. After the bailiff was notified of the spectator's conduct, the bailiff asked the spectator to leave the courtroom for the remainder of the trial.[1] The following morning another juror notified the bailiff that she saw the spectator standing at the parking garage exit, watching as the vehicles left the garage the previous day. According to the bailiff, the two jurors were feeling intimidated by the spectator's conduct.

---

[1] According to the bailiff, after informing the spectator as to the reason he was asked to leave the courtroom, the spectator responded that "he was not mad-dogging them."

3

Upon questioning by the State, the bailiff stated that he believed the spectator was E.A.'s brother-in-law. When asked if the two jurors relayed their fear to the other members of the jury, the bailiff answered: "Not to my knowledge. I mean, I was in the jury room with them this morning when it was relayed to me that he was seen at the county garage exit . . . yesterday afternoon." E.A.'s counsel subsequently moved for a mistrial arguing that E.A. could not get a fair trial when it was clear that the jury exhibited "some fear." E.A.'s motion was denied.

An appellant bears the burden of showing that the jury was prejudiced by the spectator's conduct. *Alfaro v. State*, 224 S.W.3d 426, 432 (Tex.App. – Houston [1st Dist.] 2006, no pet.). To prevail on a claim of prejudice resulting from external influence on the jury, an appellant must show either actual or inherent prejudice. *Howard v. State*, 941 S.W.2d 102, 117 (Tex.Crim.App. 1996). To determine actual prejudice we look at whether jurors actually articulated "a consciousness of some prejudicial effect." *See id*. On the other hand, inherent prejudice is determined by looking at whether "an unacceptable risk is presented of impermissible factors coming into play." *Holbrook v. Flynn*, 475 U.S. 560, 569-70, 106 S.Ct. 1340, 1346-47 (1986). Inherent prejudice rarely occurs and "is reserved for extreme situations." *Howard*, 941 S.W.2d at 117. Spectator conduct or expression which impedes normal trial proceedings will not result in reversible error unless an appellant shows "a reasonable probability that the conduct or expression interfered with the jury's verdict." *Id*.; *Landry v. State*, 706 S.W.2d 105, 112 (Tex.Crim.App. 1985).

Appellant argues that the jury was actually prejudiced because jurors articulated that they were influenced by the presence and conduct of the antagonizing spectator. In support of this argument, Appellant refers us to the bailiff's testimony that the jurors felt threatened, were fearful,

4

and intimated by the spectator's conduct. Appellant further contends that "the in-court aggression, coupled with and aggravated by the out-of-court occurrences in the El Paso County Garage, was inherently prejudicial." Although there is some evidence in the record that the jurors articulated to the bailiff that they felt threatened, fearful, and were intimated by the spectator's conduct, we do not agree with E.A. that this shows actual prejudice because the jurors did not indicate that they were influenced in any way by the spectator's conduct or expression. Moreover, there was no evidence that the spectator actually threatened anyone or attempted to influence the jury by conduct or expression. We cannot conclude without speculating what was meant by the spectator's conduct or expression in this case. *See Hill v. State*, 153 Tex.Crim. 105, 217 S.W.2d 1009, 1010-12 (1948) (where appellant moved for new trial based in part on fact that trial judge made "facial expressions in the nature of scowls or frowns" and "shook his head from side to side in a negative manner," the Court concluded appellant failed to present any error as the Court was at a loss on how to rule on a facial expression, or what was meant by a scowl, frown, or movement of the head and the trial seemed to have been fairly held and appellant was given wide latitude in presenting his evidence). Thus, E.A. has failed to show the jury was actually prejudiced.

E.A. has also failed to show inherent prejudice. The record reflects that the spectator was seen "mad-dogging" the jury after the jury's verdict on adjudication was read in court and that he was subsequently asked to leave the courtroom outside of the presence of the jury. Inherent prejudice rarely occurs and "is reserved for extreme situations." *Howard*, 941 S.W.2d at 117. Based on the record before us, we cannot conclude that this is an extreme situation which merits a mistrial. Thus, because there is no showing that the spectator engaged in any conduct or

5

expression that would have interfered with the jury's verdict, E.A. was not deprived of due process of law. Accordingly, we conclude the trial court did not abuse its discretion in denying E.A.'s motion for mistrial. *Coble*, 330 S.W.3d at 292. Issue One is overruled.

## Jury Charge Error

In Issue Two, E.A. argues that the trial court erred by giving a jury charge instruction that did not allow the jury to consider the full range of punishment authorized by law. The "Court's Charge on Disposition" in relevant part, provides:

> You have found that the said juvenile, E.A., has engaged in delinquent conduct, as a party, in that the said juvenile committed the offense of Aggravated Assault with a Deadly Weapon as alleged in the Petition.

> It is now your duty to determine whether there should be a disposition in this case. No disposition may be made unless the juvenile is in need of rehabilitation or the protection of the public or the juvenile requires that disposition be made.

> If you find a disposition is required, you must determine a sentence for the juvenile.

> Under our law, you may sentence the juvenile to commitment in the Texas Juvenile Justice Department with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice for any term of years not to exceed twenty (20) years, or, you may place the juvenile on probation.

> If you sentence the juvenile to a commitment for a term of years, the length of time that the juvenile will remain in the custody of the Texas Juvenile Justice Department and whether he will be transferred to the Institutional Division of the Texas Department of Criminal Justice will be determined at a later date.

> . . .

> If you sentence the juvenile to commitment for a term of years not to exceed twenty (20) years, the juvenile will be committed to the Texas Juvenile Justice Department with possible transfer by the Juvenile Court at any time after becoming nineteen (19) years of age to the Institutional Division . . . to serve the balance of the sentence you have selected. . . .

> . . .

6

If you sentence the juvenile for a term of 10 years or less, you may place the juvenile on probation as an alternative to committing the juvenile to the Texas Juvenile Justice Department. . . .

We note that at no time, did E.A. object to the charge as given.

*Standard of Review*

Our review of alleged jury charge error begins with a determination of whether an error actually exists in the charge and, if so, whether that error caused sufficient harm to require reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex.Crim.App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex.Crim.App. 1988); *Rubio v. State*, 203 S.W.3d 448, 451 (Tex.App. – El Paso 2006, pet. ref'd). The degree of harm required for reversal depends on whether the defendant preserved the error by objection. *Ngo*, 175 S.W.3d at 743. When, as here, a defendant fails to object to the charge, the record must show "egregious harm" to obtain reversal. *Id*. at 743-44. Egregious harm exists when the defendant is denied a fair and impartial trial. *Id*. at 750. Egregious harm errors affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect the defensive theory. *Id*. In determining whether harm has resulted, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

The jury found E.A. engaged in delinquent conduct by committing the offense of aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). Pursuant to Section 54.04(a) of the Family Code, "[t]he court or jury

7

may sentence the child to commitment in the Texas Juvenile Justice Department or a post-adjudication secure correctional facility . . . with a possible transfer to the Texas Department of Criminal Justice for a term of: . . . (B) not more than 20 years if the conduct constitutes a felony of the second degree[.]" TEX. FAM. CODE ANN. § 54.04(d)(3)(B) (West 2014). The trial court instructed the jury that it could sentence E.A. "for any term of years not to exceed twenty (20) years, or, you may place the juvenile on probation."

E.A. complains that the jury was only allowed to consider ten years of confinement or ten years of community supervision. Although E.A. further argues that the jury was not allowed "to consider the full gamut of 2 years of community supervision to 20 years of confinement, or even a commitment to the Texas Youth Commission for a specified term of years," the State correctly points out that because this case involves the trial of a juvenile, and not of an adult, the "full gamut" is a "minimum of no disposition or zero years up to 20 years." *See* TEX. FAM. CODE ANN. § 54.04(c) (West 2014) (providing that the court must dismiss the child and enter a final judgment without any disposition if the court or jury does not find the child is in need of rehabilitation or the protection of the public or the child requires that disposition be made). E.A. relies on *Stein v. State*, 515 S.W.2d 104 (Tex.Crim.App. 1974) to support his contention that the trial court erred by submitting a penalty range to the jury that did not comport with law thereby depriving him of a fair and impartial trial. In *Stein*, the Court of Criminal Appeals found the trial court committed harmful error by submitting the wrong penalty and instructing the jury that the minimum punishment was a $100.00 fine, when in reality the minimum punishment was a $1.00 fine. *Id*. at 108. *Stein* is distinguishable from this case in that the range of punishment in *Stein* involved a question of the correct applicable law specifying punishment. *Id*. Here, the jury charge

8

language tracked the statutory language and included the full punishment range. It instructed the jury that if it found a disposition was required, it could sentence E.A. for any term of years not to exceed twenty (20) years, or place him on probation. *See* TEX. FAM. CODE ANN. § 54.04 (West 2014).

Furthermore, as noted by the State, the record reflects that both parties clearly made this full range of punishment known to the jury during voir dire, when the charge was read in open court, and at closing arguments. During voir dire, the State and E.A.'s counsel informed the jury panel that the applicable punishment range was from "nothing" or "no disposition" "up to 20 years' incarceration." E.A.'s counsel further explained that a disposition of ten years could be probated by the jury. Similarly during their closing arguments the State and E.A.'s counsel again informed the jury that it could sentence E.A. for any term of years not to exceed twenty years or place E.A. on probation. Because the jury charge included the full range of punishment authorized by law, we conclude no error existed when the trial court submitted the complained-of jury charge to the jury in this case. *Ngo*, 175 S.W.3d at 744; *Almanza*, 686 S.W.2d at 171; *Rubio*, 203 S.W.3d at 451. Even assuming error existed, when we consider the entire jury charge, the state of the evidence, counsel's arguments, and any other relevant information in the record as a whole, we conclude it was not so egregious as to deprive E.A. of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171. Issue Two is overruled.

## CONCLUSION

Having overruled E.A.'s two issues on appeal, we affirm the judgment of the trial court.


August 20, 2014                                    GUADALUPE RIVERA, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

9