**Opinion filed September 11, 2014**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00053-CR

_____

### CHRISTY WINSTEAD, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court No. 2**
**Denton County, Texas**
**Trial Court Cause No. CR-2012-00105-B**

### M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Christy Winstead, of the offense of driving while intoxicated.[1] The trial court assessed Appellant's punishment at 120 days in jail, probated for a term of eighteen months, and a $600 fine and sentenced her accordingly. We affirm.

---

[1]*See* TEX. PENAL CODE ANN. § 49.04 (West Supp. 2013).

## I. *The Charged Offense*

Appellant was charged by information with the offense of driving while intoxicated. The State alleged in the information that, on or about November 29, 2011, Appellant operated a motor vehicle in a public place while intoxicated. To obtain a conviction for driving while intoxicated, the State must prove that the defendant operated a motor vehicle in a public place while intoxicated. PENAL § 49.04(a). "Intoxicated" is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body" or "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2) (West 2011). Appellant pleaded "not guilty" to the charged offense, and the case proceeded to trial.

## II. *Expert Qualification*

As an initial matter, the trial court held a Rule 702 hearing in order to determine if Officer Derek Bradford of the City of Denton Police Department was qualified to testify as an expert about the horizontal gaze nystagmus[2] (HGN) test. *See* TEX. R. EVID. 702. Outside the presence of the jury, Officer Bradford testified that he had a practitioner certificate in the administration of the HGN test, and he described the test as follows: The suspect stands with her hands and feet together while the officer holds a stimulus twelve to fifteen inches from the suspect's eyes. The officer first determines if the suspect's eyes are equally sized. If the answer to that question is yes, the officer then makes a series of passes in front of the suspect's eyes in order to determine if she can equally track the stimulus with both eyes. If the answer to that question is yes, the suspect is a good candidate for the

---

[2]Nystagmus is defined as an involuntary rapid oscillation of the eyes in a horizontal, vertical, or rotary direction. *Emerson v. State*, 880 S.W.2d 759, 765 (Tex. Crim. App. 1994). Horizontal gaze nystagmus refers to the inability of the eyes to smoothly follow an object moving horizontally across the field of vision, particularly when the object is held at an angle of forty-five degrees or more to the side. *Quinney v. State*, 99 S.W.3d 853, 857 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

HGN test. The officer performs the initial "lack of smooth pursuit" phase of the HGN test by moving the stimulus away from and then back across the suspect's eyes. This movement is done twice on each eye. The officer then moves to the "distinct and sustained nystagmus at maximum deviation" phase of the test, during which he takes the stimulus out to maximum deviation (to the point where there is no white left in the corner of the suspect's eyes) and holds it for at least four seconds. This movement is done twice on each eye. The officer next performs the "onset of nystagmus prior to 45 degrees" phase of the test by taking the stimulus away from the suspect and looking for nystagmus prior to reaching approximately forty-five degrees of the suspect's gaze.

Officer Bradford noted that the police academy and the Denton Police Department trained him differently regarding the administration of the HGN test. The academy trained him to perform the test according to the National Highway Traffic Safety Administration (NHTSA) standards, which state that, during the "lack of smooth pursuit" phase, the stimulus is to be taken out for two seconds and then back in for two seconds. The Denton Police Department later trained him to perform this same pass by moving the stimulus out for one second and then in for one second.

Officer Bradford noted that he applied the standards he had been taught by the Denton Police Department when he performed the HGN test on Appellant, meaning that, during the "lack of smooth pursuit phase," he took the stimulus out for one second and then in for one second. Officer Bradford explained that performing the test this way might cause an officer to miss HGN but would not cause him to see HGN that was not there.

Appellant then argued that Officer Bradford could not be designated as an expert on the HGN test because he had been improperly trained and because he had incorrectly stated, at an earlier hearing, that the passes during the "distinct and

3

sustained nystagmus at maximum deviation" phase should be held for three seconds, instead of four. The State argued that Officer Bradford was certified to administer the HGN test by both the NHTSA and the police academy and that slight deviations in the administration of the test do not render the results inadmissible. The trial court admitted Officer Bradford's testimony and found that "the issue related to one second" went to weight, not admissibility.

### III. *Evidence at Trial*

In the presence of the jury, Officer Bradford then testified about the events that led to Appellant's arrest.[3] Officer Bradford stated that, at around midnight on November 29, 2011, he was monitoring traffic on East Route 380 when he spotted a vehicle traveling sixty-three miles per hour in a forty-five mile-per-hour zone. Officer Bradford turned on his overhead lights and pursued the vehicle until it pulled into a gas station on the side of the highway.

Officer Bradford got out of his patrol car and identified Appellant as the driver of the vehicle. As he talked to Appellant, Officer Bradford noted that her speech was slurred and her eyes were red and watery. When Officer Bradford asked Appellant where she was coming from, her initial response was the University of North Texas. When Officer Bradford realized that Appellant had not been traveling in the correct direction to have been coming from the university, he asked the question once more. Appellant then stated that she had just left a friend's house and was headed home.

After Appellant stated that both her house and her friend's house were located on McKinney Street, Officer Bradford asked Appellant why she was across town if she lived on the same street as her friend. Appellant responded that, in

---

[3]In conjunction with Officer Bradford's testimony, the State offered video taken from the in-dash camera in his patrol car. The video showed the events leading up to, and directly following, Appellant's arrest. The video evidence paralleled Officer Bradford's testimony.

order to buy cigarettes, she had been driving to the exact gas station at which they were currently stopped.

Officer Bradford next asked Appellant if she had had anything to drink that night, and Appellant responded that she drank one beer at her friend's house an hour before being pulled over. Officer Bradford then had Appellant get out of her vehicle and asked her if she would submit to an HGN test. Appellant was initially hesitant to perform the test.

Officer Bradford next asked Appellant to evaluate the effect alcohol was having on her, on a scale from zero to ten. Appellant initially responded with "five" but then changed her answer to "four." Appellant also admitted to Officer Bradford that she drank two beers at her friend's house, not one, and that she had lied to him before. Appellant stated that she drank the second beer a few minutes before she got into her car.

At this point, Officer Bradford asked Appellant once more if she wanted to take the HGN test, and Appellant agreed to take the test. During the administration of the test, Officer Bradford smelled alcohol on Appellant's breath and noted that she was swaying. Based on Appellant's performance during the test, Officer Bradford believed that she was intoxicated.

Officer Bradford then informed Appellant that he saw jerking in her eyes and asked her to perform one of the other two field sobriety tests.[4] Appellant chose not to take any more tests and was arrested for the offense of driving while intoxicated. After she was arrested, Appellant refused to provide a blood or breath specimen and told Officer Bradford that she was "right at the edge."

---

[4]Officer Bradford explained that the HGN test is one of three standardized field sobriety tests created for field use by the NHTSA. The other two tests are the "one-leg stand" and the "walk-and-turn."

During his testimony of the events leading up to Appellant's arrest, Officer Bradford explained the HGN test to the jury, as he had done during the Rule 702 hearing. Appellant obtained a running objection to the testimony.

Officer Bradford explained that an officer performing the HGN test is looking for a total of six "clues," which are indicators that a person is intoxicated. Officer Bradford stated that, if an officer spots four of the six clues, the subject is deemed intoxicated. Officer Bradford noted that he identified all six clues when he performed the HGN test on Appellant, and he stated that he believed the clues were caused by alcohol.

To illustrate HGN to the jury, the State also offered a training video used by the police academy. The video showed two sets of eyes, one with nystagmus and one without, undergoing all three phases of the HGN test. Appellant objected to the video under Rules 401, 402, and 403 of the Texas Rules of Evidence and under *Crawford v. Washington*, 541 U.S. 36 (2004). The trial court overruled Appellant's objections and admitted the video as demonstrative evidence.

## IV. *Issues Presented*

Appellant presents five points of error on appeal. First, Appellant contends that the trial court abused its discretion when it permitted Officer Bradford to testify as an expert on the HGN test. Appellant argues in her second, third, and fourth points of error that the trial court abused its discretion when it admitted State's Exhibit No. 2, a video illustration of HGN. In her final point of error, Appellant contends that the evidence presented at trial was legally insufficient to support her conviction.

## V. *Standard of Review*

We review a sufficiency of the evidence issue under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—

Eastland 2010, pet. ref'd).  Under that standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The test for determining whether a trial court properly admitted evidence is an abuse of discretion, which is a question of whether the court acted without reference to any guiding rules and principles.  *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  A trial court's judgment will not be reversed unless the ruling was outside the zone of reasonable disagreement.  *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

## VI. *Analysis*

### A.  *Sufficiency of the Evidence*

We first address Appellant's point of error on sufficiency.  Appellant contends that, because the evidence presented at trial revolved around an improperly administered HGN test, the evidence was legally insufficient to sustain her conviction.  A conviction for driving while intoxicated can be supported solely by circumstantial evidence.  *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).  "'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor' and 'the standard of review on appeal is the same for both direct and circumstantial evidence cases.'"  *Kuciemba*, 310 S.W.3d at 462 (quoting *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).  When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Garcia v. State*, 919 S.W.2d 370, 378 (Tex.

7

Crim. App. 1994); *Chambers v. State*, 805 S.W.2d 459, 460 (Tex. Crim. App. 1991). The evidence presented at trial showed that Appellant was speeding when she was pulled over by Officer Bradford. Appellant's speech was slurred, and her eyes were red and watery. When Officer Bradford asked Appellant simple questions, she provided inconsistent responses.

Appellant initially claimed that she had had one beer an hour before she was pulled over but then admitted that she had actually had two beers, the last of which she drank immediately before getting in her vehicle. Appellant also admitted that she was feeling the effects of alcohol and rated that feeling "five" on a scale from zero to ten. As Officer Bradford administered the HGN test, he smelled alcohol on Appellant's breath and noticed that she was swaying. Officer Bradford also saw all six "clues" in Appellant's eyes during the test and testified that he believed she was intoxicated based on these results. Finally, Appellant refused to take the other two standardized field sobriety tests, refused to provide a specimen of breath or blood, and told Officer Bradford that she was "right at the edge."

We hold that, viewed in the light most favorable to the conviction, there was sufficient evidence for a rational trier of fact to have found Appellant guilty of the offense of driving while intoxicated. We overrule Appellant's fifth point of error.

*B. Expert Testimony*

We next address Appellant's first point of error. Appellant contends that the trial court abused its discretion when it permitted Officer Bradford to testify as an expert on the HGN test. A trial court's decision to allow expert testimony is reviewed under an abuse of discretion standard, and we will not reverse the trial court unless its decision is outside the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Appellant argues that the trial court's decision violated Rule 702 of the Texas Rules of Evidence and the decision of the Court of Criminal Appeals in *Emerson*, 880 S.W.2d 759. Appellant claims

8

that Officer Bradford was not qualified to testify as an expert on the HGN test due to the fact that he improperly administered the test on the night of her arrest.

A trial judge has broad discretion in deciding whether a witness qualifies as an expert under Rule 702. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990). The Court of Criminal Appeals has held that, pursuant to Rule 702, the HGN test is a reliable indicator of intoxication. *Emerson*, 880 S.W.2d at 768. When administering the test, officers must follow standardized procedures, as outlined by the NHTSA manual. *Id.* For testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the witness testifying is qualified as an expert on the HGN test, specifically concerning its administration and technique. *Id.* at 769. In the case of a police officer, this requirement will be satisfied by proof that the officer has received practitioner certification by the State of Texas in the administration of the test. *Id.*

Slight variations from the NHTSA's testing protocol do not render HGN test results inadmissible but may affect the weight to be given the testimony. *Kamen v. State*, 305 S.W.3d 192, 196–99 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Plouff v. State*, 192 S.W.3d 213, 219 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Permissible variations include performing the test faster than prescribed. *E.g.*, *Compton v. State*, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet. ref'd). In *Compton*, the officer performed the "smooth pursuit" phase of the test in eleven seconds, instead of sixteen, and the "nystagmus at maximum deviation" phase in nineteen seconds, rather than thirty–two. *Id.* at 378. The court found that this slight variation in timing did not render the test results inadmissible, noting that the NHTSA manual provided only approximations of the time required to properly administer the HGN test. *Id.* at 378–79.

In contrast, Texas courts have held that noncompliance with the NHTSA manual renders test results inadmissible. *E.g.*, *McRae v. State*, 152 S.W.3d 739,

743–44 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). In *McRae*, the court held that the officer's error was not a mere slight variation in test administration, given that the officer did not administer all three parts of the test, made only one pass of each eye—rather than two, and admitted that his administration of the test was not valid. *Id.* Here, Appellant argues that Officer Bradford's administration of the HGN test on the night of her arrest was more than a slight deviation from the NHTSA guidelines and was more similar to the events presented by *McRae* than *Compton*. We disagree.

Although Officer Bradford performed the HGN test on Appellant quicker than the NHTSA manual requires, the variance was comparable to the leeway courts have previously afforded officers to reflect the fact that the HGN test is a field test. *See, e.g.*, *Maupin v. State*, No. 11-09-00017-CR, 2010 WL 4148343, at *3–4 (Tex. App.—Eastland Oct. 21, 2010, pet. ref'd) (mem. op., not designated for publication) (finding that results of HGN test were valid and admissible even though officer performed the test in forty-three seconds instead of the suggested sixty-four); *Leverett v. State*, No. 05-05-01496-CR, 2007 WL 1054140, at *3 (Tex. App—Dallas Apr. 10, 2007, no pet.) (not designated for publication) (finding that results of HGN test were valid and admissible despite the fact that the officer had performed the test in fifty-three seconds). "It would be unreasonable to conclude that any variation in administering the tests, no matter how slight, could automatically undermine the admissibility of an individual's poor performance of the tests." *Compton*, 120 S.W.3d at 378. Officer Bradford administered the HGN test on Appellant eight seconds faster than the testing time provided by the NHTSA guidelines. This slight difference in timing does not amount to noncompliance with the guidelines.

We hold that the trial court did not abuse its discretion when it permitted Officer Bradford to testify as an expert on the HGN test in this case. At the time of

trial, Officer Bradford had been trained on the HGN test by both the police academy and the Denton Police Department, and he was certified in the administration of the test. The fact that Officer Bradford administered the HGN test on Appellant quicker than suggested by the NHTSA did not affect his ability to testify as an expert witness on the test. We overrule Appellant's first point of error.

### C. HGN Training Video

We now address Appellant's remaining points of error. Appellant argues in her second, third, and fourth points that the trial court abused its discretion when it admitted State's Exhibit No. 2, a video used by the police academy to train officers on the administration of the HGN test.

#### 1. Point of Error No. Two: Training Video

In her second point of error, Appellant claims that the admission of the video was error because the evidence was not relevant and was more prejudicial than probative. Demonstrative evidence has no independent relevance to the case but is offered to help explain or summarize the witness's testimony or to put events and conditions into a better perspective. *Torres v. State*, 116 S.W.3d 208, 213 (Tex. App.—El Paso 2003, no pet.). To establish the relevancy of demonstrative evidence, the proponent must first authenticate it. *Id.* The proponent is then required to establish that the evidence is fair and accurate and that it helps the witness to demonstrate or illustrate his testimony. *Id.*

The training video played for the jury in this case showed two sets of eyes, one with nystagmus and one without, undergoing all three phases of the HGN test. Officer Bradford confirmed that the video accurately portrayed nystagmus. Officer Bradford also noted that he first saw the video during his training at the police academy and stated that neither set of eyes shown in the video belonged to Appellant. We hold that Officer Bradford properly authenticated the video through

11

this testimony and that the State established that the training video would help Officer Bradford demonstrate or illustrate his testimony. *See id.*

Appellant argues that the video did not assist the jury because of all the "unknowns" surrounding its production. Appellant further argues that the video was not relevant because it was not specifically connected to her. We find that Appellant's claims are without merit, and we note that other courts have rejected similar challenges to HGN training videos. *See, e.g.*, *Hartsock v. State*, 322 S.W.3d 775, 779–80 (Tex. App.—Fort Worth 2010, no pet.) (finding that officer's testimony that video was merely a training video and did not depict the defendant was sufficient to properly authenticate video as demonstrative evidence); *Thrasher v. State*, No. 12-09-00334-CR, 2010 WL 2638070, at \*2 (Tex. App.— Tyler June 30, 2010, no pet.) (mem. op., not designated for publication) (video was admissible as demonstrative evidence even though the video's daytime laboratory conditions were dissimilar to the dark roadside conditions where the defendant was given the test).

### 2. *Points of Error Nos. Three and Four: Right of Cross-Examination and Confrontation*

By her third and fourth points of error, Appellant contends that the trial court's admission of the training video deprived her of her rights of cross-examination and confrontation under the United States and Texas Constitutions.[5] *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. Appellant claims that she was unable to effectively challenge the training video in front of the jury because Officer Bradford could not answer her questions about the exhibit.

---

[5]Because Appellant has not provided any argument or authority that the Texas Constitution provides different or greater protections than its federal counterpart, we analyze her argument under only the United States Constitution. *See* TEX. R. APP. P. 38.1(h); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); *Santacruz v. State*, 237 S.W.3d 822, 827 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

The United States Constitution guarantees an accused the right to be confronted with the witnesses against her. U.S. CONST. amend. VI. The Confrontation Clause of the Sixth Amendment forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68. Whether a particular out-of-court statement is testimonial in nature is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). Generally speaking, a hearsay statement is testimonial when the surrounding circumstances objectively indicate that the primary reason the statement was made was to establish or prove past events potentially relevant to later criminal prosecution. *Id.*

We conclude that the training video admitted in this case did not implicate the Confrontation Clause. The training video was not hearsay because it did not contain any "statement." *See* TEX. R. EVID. 801(a), (d). The video contained no audio, no written expression, and no nonverbal conduct intended as a substitute for verbal expression. *See id.* Moreover, the video was not testimonial in nature because it was not made in relation to Appellant's criminal prosecution. *See De La Paz*, 273 S.W.3d at 680.

We also note that Appellant had the opportunity to discuss the reliability of the video during her cross-examination of Officer Bradford. Although Officer Bradford was unable to answer several questions about the production of the video,[6] the video was admitted solely as demonstrative evidence. As such, the video had no independent relevance to the case but was offered merely to help explain Officer Bradford's testimony. *See Torres*, 116 S.W.3d at 213. Officer Bradford's inability to provide every detail about the training video did not violate Appellant's rights to cross-examination or confrontation.

---

[6]Officer Bradford testified that he did not know who created the training video, whose eyes were shown in the video, who administered the HGN test shown in the video, what caused the nystagmus shown in the video, or how the video was recorded.

We hold that the trial court did not abuse its discretion when it admitted the HGN training video. The training video was relevant and was more probative than prejudicial, as the video aided the jury in understanding what nystagmus looks like to an officer performing the HGN test. *See Guerrero v. State*, No. 01-11-01013-CR, 2013 WL 3354653, at *8 (Tex. App.—Houston [1st Dist.] July 2, 2013, pet. ref'd) (mem. op., not designated for publication) (video properly admitted as "teaching tool" that assisted the jury during officer's testimony explaining the HGN test). Moreover, the video was properly authenticated as demonstrative evidence and did not violate Appellant's constitutional rights. We overrule Appellant's second, third, and fourth points of error.

## VII. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON
JUSTICE


September 11, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.